## In re BANKSHARES CORPORATION OF THE UNITED STATES.

District Court, S. D. New York.
June 19, 1931.

See, also (C. C. A.) 50 F.(2d) 94.

The report of Special Master Henry K. Davis on application to set aside the adjudication was as follows:

The bankrupt, a New Jersey corporation, dealer in investment securities at 43 Exchange Place, this city, was adjudicated in an involuntary proceeding June 9, 1930, and thereafter Irving Trust Company was duly elected its trustee and is now acting as such.

May 12, 1930, Samuel I. Kessler was appointed receiver of the corporation by the Court of Chancery of New Jersey. Thereafter said chancery receiver moved in the District Court to vacate the adjudication, and this application was denied by Judge Grubb

on or about June 25, 1930, before whom the motion came.

Thereafter two motions were made by the attorneys for the objectors on behalf of two different creditors to vacate the adjudication, and these motions resulted in two orders identical in form, one by Judge Bondy and the other by Judge Caffey, dated August 17 and September 11, 1930, respectively, referring the matters involved to me as special master in the words and form following, to wit: "That the subject matter of this application be submitted to Hon. Henry K. Davis, Referee in Bankruptcy as a Special Master to examine, take testimony, and report whether the petitioner is a creditor of the alleged bankrupt having a provable claim and if so, then whether the admission that the corporation is unable to pay its debts and is willing to be adjudicated a bankrupt was signed by persons who actually were directors of said corporation or persons authorized to make such admissions on its behalf, and whether the alleged bankrupt had its principal place of business in the Southern District of New York for the greater part of six (6) months before the filing of the petition and whether the corporation was insolvent, and whether or not the creditors who signed the petition in bankruptcy were creditors having provable claims against the corporation."

Taking up the question of whether the claims of the two creditors, Journal Square Bank Building Corporation and J. Meyers Stationery & Printing Company, are provable debts, there is grave doubt whether Journal Square Bank Building Corporation is a creditor of the bankrupt.

It was not until the middle of April, 1930, that bankrupt moved any part of its office furnishings to Jersey City. (S. M. p. 72.) Rent bills on which the claim is based were rendered to bankrupt May 1 and June 1, 1930. (Id.) In the month of May the chancery receiver was in possession and he could not render a bill to himself.

The proposed lease under which bankrupt occupied claimant's premises was made out, not to bankrupt, but to Knickerbocker National Corporation (Trustee's Ex. 1), a distinct corporation from bankrupt. (S. M. pp. 76, 181, 182, 183.)

It would seem that the attorneys for the objecting creditor also acting for the chancery receiver had these facts in mind probably as the result of fuller investigation when they made an identical motion on behalf of J. Meyers Stationery & Printing Company on

which the second motion on which Judge Caffey's order of reference is based.

■■ There is no doubt that this claimant has a good claim for printing against the bankrupt, for $175. (S. M. p. 6.) The only question is whether its objection to bankruptcy three months after adjudication does not come too late. Claimant's officers knew when the petition was filed June 6, 1930. (S. M. pp. 27, 28, 29.) The motion papers were executed at the request of the attorneys for the chancery receiver. (S. M. pp. 137, 139.)

There is judicial authority for the proposition that a creditor in default may not as of right come in and oppose bankruptcy after the time limited for pleading. Section 18b of the Bankruptcy Act (11 USCA § 41 (b) provides as follows: "The bankrupt, or any creditor, may appear and plead to the petition within five days after the return day, or within such further time as the court may allow." There is no proof here, nor is it claimed, that any extension of time was given or asked.

In Re Marion Contract & Construction Co. (D. C.) 166 F. 618, 620, where the question of the right of a creditor in default to plead was before the court, the court said: "Too much importance cannot be attached to the fact that they had this previous knowledge; for that, coupled with their rights under clause 'b,' supra, gave them, respectively, their day in court, but, instead of availing themselves of it, they made default. Like others in default in judicial proceedings, they cannot now be heard, unless upon a strong showing which will move the discretion of the court in the direction of granting what they ask."

As before stated, I have no doubt that it was the request of the chancery receiver rather than any inherent desire on its part that led the creditor to make its belated application to set aside the adjudication.

These laches I think would be sufficient to deny its application.

The conclusions I have reached relative to the status of the two claims, viz., that one does not exist, and that the other makes its application too late, would dispose of these applications in limine.

I realize, however, that a motion where laches is involved is addressed to the discretion of the court and the statute (18b ante) authorizes discretion. Assuming then that the legal discretion of the court would place the Meyers Company in the position of an objecting creditor, the consideration of the other questions involved will be in order.

There is no doubt that the three creditors who caused to be filed the petition against the bankrupt were its bona fide creditors. That is conceded. (S. M. pp. 83, 173, 174.) There is also no doubt that the bankrupt carried on its business in the Southern District of New York for the greater part of the six months just preceding the filing of the petition. Section 2 (1), Bankruptcy Act, 11 US CA § 11(1). (S. M. pp. 72, 107–110, 175, 179.)

Neither is there any doubt that the meeting of the directors of the bankrupt June 6, 1930, where the resolution of insolvency was passed, was in all respects legal and regular. On that date all of the directors of bankrupt had resigned except Mr. Harrison and Mr. Kurtzman. (Trustee's Ex. 9.)

As appears from the bankrupt's minutes, in addition to the two surviving directors, three additional directors were elected in place of those resigned. After this had been done and new officers elected, the following resolution was offered and unanimously adopted:

"Whereas, the Corporation had been advised that an involuntary petition of bankruptcy has been filed, or is to be filed, against the Corporation, and

"Whereas, it is considered that the Corporation is insolvent. And also that it is actually unable to pay its debts and meet its obligations as the same mature in due course, it is

"Therefore resolved: That the Corporation consents and does hereby consent that it be adjudicated a bankrupt in accordance with the said petition, and that a receiver be appointed for it, and be it

"Further resolved, that A. C. Hindman a member of the New York Bar be and he is hereby authorized to appear in court upon presentation of said petition and to accept service of the same and to consent that this corporation be adjudicated a bankrupt, and to the appointment of a receiver."

■ The directors had the right to pass this resolution. Cole v. Cunningham, 133 U. S. 107, 10 S. Ct. 269, 33 L. Ed. 538. It was under this resolution that Mr. Hindman, attorney for bankrupt, filed the consent to adjudication now in the bankruptcy file. There is little controversy over the matters above stated. There could not be in the face of the complete proof furnished by the trustee's attorneys.

■ We come now to what the objector asserts to be the most important part of the

case, viz., that the appointment in New Jersey of the chancery receiver negatived and invalidated the action of the bankrupt's directors in consenting to bankruptcy.

There is some New Jersey authority for this contention. Vice Chancellor Lane, in Cavagnaro v. Indian Tire & Rubber Co., 90 N. J. Eq. 532, 107 A. 643, 44 A. B. R. 137, so held. A reading of that case shows that the Vice Chancellor sought to find justification for his decision on the bankruptcy side in the case of In re Hudson River Electric Power Co. (D. C.) 173 F. 934, 945, a case decided by Judge Ray in the Northern District of New York. The point of that decision was, however, that the alleged bankrupt was a public service corporation and so, not being a mercantile or manufacturing company, not within the purview of the bankruptcy act. That case also involved a federal equity receivership and not a receivership in a state court. In that case also Judge Ray said: "Here we have no conflict between the courts of the United States in bankruptcy and the state courts where, in such matters, the laws of the United States are paramount."

On the other hand, as against the Vice Chancellor's decision the authorities are conclusive that the bankruptcy laws when they act take precedence over state insolvency proceedings.

In a comparatively late case, International Shoe Co. v. Pinkus, 278 U. S. 261, 49 S. Ct. 108, 109, 73 L. Ed. 318, Mr. Justice Pierce Butler said: "A state is without power to make or enforce any law governing bankruptcies that * * * conflicts with the national bankruptcy laws."

In Re C. Moench & Son Co., 130 F. 685, page 688 (C. C. A. 2d) Judge Lacombe said: "As to the proposition that the proceedings should be dismissed on any theory of collusion or estoppel, and that the appointment of temporary receivers deprived the board of directors of their power to make the written admission, we think it unnecessary to add anything to the opinion of the District Judge. In Sigua Iron Co. v. Brown, 171 N. Y. 494, 64 N. E. 194, cited in that opinion, the court says: 'The appointment of a temporary receiver does not dissolve a corporation, nor restrain the exercise of its corporate powers. His functions are limited to the care and preservation of the property committed to his charge. He does not represent the corporation in its individual or personal character, nor supersede it in the exercise of its corporate powers, except as to the particular property confided to him. * * * The corporation still had the right to exercise its corporate powers, except as to the matters and claims specially confided to the receiver by the court.' "

In Cresson & Clearfield Coal & Coke Co. v. Stauffer (C. C. A.) 148 F. 981, 983, a sale by a sheriff of all of a corporation's assets and its franchise under Pennsylvania law worked a dissolution of the corporation a step further than is claimed for the New Jersey law. In spite of this the directors of the corporation claimed the right to invoke the bankruptcy law, and Judge George Gray for the Third Circuit said: "However this may be, the ground upon which the adjudication was actually made, was a sound one. The admission in writing by a person (which designation applies to a corporation), of his inability to pay his debts and his willingness to be adjudged a bankrupt on that ground, is one of the acts expressly declared in the third section of the act. The admission in this case was made in writing by the secretary of the corporation, specially authorized by a vote of the board of directors, as set out in the petition. * * * It is, however, strenuously insisted that this act of the board of directors was a nullity, for the reason alleged that, at the time it was made the corporation had ceased to exist, and that therefore, the directors and all other officers were functi officiis. It is true, that the law already referred to provides that the property and franchises of the corporation, sold under this special fi. fa., shall pass to the purchaser, thus, in effect, terminating the existence of the old corporation. If, however, the proceeding by which this property and franchises were sold, was an act of bankruptcy, it was void and of no effect. If it were not, still the existence of the corporation is not terminated in every respect by this requirement of the state law. * * * And we think that the paramount authority of the federal bankrupt law is sufficient to keep alive the corporation in this case for the purposes of the bankrupt jurisdiction created by the said act, and to give efficacy to the admission made by the directors of the insolvent corporation as an act of bankruptcy."

In Matter of Dressler Producing Corporation, 262 F. 257, 259 (C. C. A. 2d), the court reiterated its opinion in Re C. Moench & Sons Co., supra, and said: "In the case at bar the directors can at least be said to be holding office as de facto officers. They, under oath, say that the corporation is unable to pay its debts in full, and ask the protection of the bankruptcy court. This is sufficient to

require the bankruptcy court to take jurisdiction. * * * Where the act of bankruptcy is a written admission, as the statute provides (section 3a [5] Comp. St. § 9587), the question of solvency is immaterial. Matter of Cohn, 227 F. 843, 142 C. C. A. 367; West Co. v. Lea, 174 U. S. 590, 19 S. Ct. 836, 43 L. Ed. 1098. In Re Moench & Sons Co., 130 F. 685, 66 C. C. A. 37, this court held that the fact that the property of the corporation was in the possession of receivers appointed in the state court did not affect the jurisdiction of the court of bankruptcy to adjudicate such corporation a bankrupt. It was further held that an admission in writing of inability to pay its debts, and its willingness to be adjudicated a bankrupt on that ground, prevented a creditor from proving the solvency as a defense. * * * It is the desire of the law that the state court proceedings be superseded upon the filing of a petition in bankruptcy."

In a late case Struthers Furnace Co. v. Grant (C. C. A. 6th) 30 F.(2d) 576, 577, Judge Mack said: "It is clear that the mere existence of an equity receivership does not preclude directors from assisting others in procuring an adjudication in involuntary bankruptcy, even though the state court * * * has issued the usual injunction against interference. * * * and the pendency of a receivership does not ordinarily prevent the filing of a voluntary petition. * * * The statements to the contrary in In re Associated Oil Co. (D. C.) 271 F. 788, followed in In re Hammond Motors Co. (D. C.) 13 F.(2d) 901, have been properly criticized in other circuits."

See also In re Yaryan Naval Stores Co. (C. C. A.) 214 F. 563.

The decision of Judge Thomas in Re American & British Mfg. Corp., 300 F. 839, 849 (D. C. Conn.), states the situation clearly: "The question has been raised by the petitioner that the filing of the petition in bankruptcy amounts to contempt of court, and that the officers of the corporation did not have the power to file the petition in bankruptcy, in view of the appointment of receivers in equity and the injunctions issued by the courts in receivership proceedings. I am unable to concur in this view. The Bankruptcy Act is paramount, and its jurisdiction is exclusive of all other courts. Among its purposes is that all of the affairs of a bankrupt may be adjudicated in one court. The authorities in support of the proposition that,

notwithstanding receivership proceedings, a petition in bankruptcy may be filed, are overwhelming, and not only is the right to file a petition logical and legal, but also equitable. To hold otherwise would be to work great injustice, and to deprive those who might be entitled to the benefit of the act of their constitutional rights." Citing In re Watts & Sachs, 190 U. S. 1, 27, 23 S. Ct. 718, 47 L. Ed. 933; U. S. Fidelity & Guaranty Co. v. Bray, 225 U. S. 205, 217, 32 S. Ct. 620, 56 L. Ed. 1055; U. S. v. Wood et al. (C. C. A.) 290 F. 109; In re Yaryan Naval Stores Co. (C. C. A.) 214 F. 563.

Under the authorities quoted and the facts here involved, it is clear that the adjudication was authorized and should stand. Only one possible question remains, and that is the question of solvency. If that were before me for decision, I would have no hesitation in finding that the bankrupt was insolvent. This record so shows. (S. M. pp. 146, 153, 154, 193, 203.) That question, however, is removed by the corporation's admission in writing of inability to pay its debts. In George M. West Co. v. Lea, 174 U. S. 590, 19 S. Ct. 836, 837, 43 L. Ed. 1098, considering what constituted acts of Bankruptcy under section 3 of the Bankruptcy Act [11 USCA § 21], Mr. Chief Justice White said: "Considering alone the text of paragraph a, it results that the nonexistence of insolvency at the time of the filing a petition for adjudication in involuntary bankruptcy because of the acts enumerated in 1, 4, or 5, which embrace the making of a deed of general assignment, does not constitute a defense to the petition, unless provision to that effect be elsewhere found in the statute."

To quote again from In re Dressler Producing Corporation, supra: "Where the act of bankruptcy is a written admission, as the statute provides * * * the question of solvency is immaterial."

Falk & Orleans, of New York City, for objection creditors and application.

Javits & Javits, of New York City, for trustee in bankruptcy, opposed.

### WOOLSEY, District Judge.

The above report of special master is in all respects confirmed and approved. Cf. Matter of Bankshares Corp. of U. S., 50 F.(2d) 94, decided by the Circuit Court of Appeals for this Circuit June 1, 1931.

Settle order on one day's notice.