**In re PRUDENCE CO., Inc. (EGBERT, Superintendent of Banks, et al., Appellants).** \*

No. 358.

Circuit Court of Appeals, Second Circuit.
July 22, 1935.

James T. Heenehan, of New York City (Gerald Donovan and D. Basil O'Connor, both of New York City, of counsel), for appellant Superintendent of Banks.

Weinstein & Levinson, of New York City (Frank Weinstein and Samuel J. Levinson, both of New York City, of counsel), for appellants creditors.

Miller, Boston & Owen, of New York City (Harold H. Corbin and Edward J.

*Writ of certiorari denied Egbert v. Callaghan, 56 S. Ct. 247, 80 L. Ed. ——.

Bennett, both of New York City, of counsel), for appellee debtor.

Kaufman, Weitzner & Celler, of New York City, and Thomas Cradock Hughes, of Brooklyn, N. Y. (Emil Weitzner and Samuel Kaufman, both of New York City, Thomas Cradock Hughes, of Brooklyn, N. Y., and Isadore Polier, of New York City, of counsel), for appellees trustees.

Edward Endelman, of New York City, for appellees petitioning creditors.

Archibald Palmer, of New York City, and Jacob A. Freedman, of Brooklyn, N. Y. (Archibald Palmer, Sydney Basil Levy, and Harry D. Glicksman, all of New York City, on the brief), for appellees intervening creditors.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

In September, 1934, the superintendent of banks of the state of New York, pursuant to section 57 of the New York Banking Law (Consol. Laws, c. 2), took possession of the property and business of the Prudence Company, Inc., hereafter referred to as the debtor. Shortly thereafter three creditors of the debtor filed a petition for reorganization of the debtor under section 77B of the Bankruptcy Act (11 USCA § 207). The superintendent of banks and certain creditors filed answers attacking the jurisdiction of the court and raising other issues. During the trial of the issues thus raised, the debtor filed its voluntary petition under section 77B, pursuant to a vote of its board of directors. Over the objections of the appellants, the District Court entered the order appealed from. This order consolidated the proceedings upon the involuntary and voluntary petitions, approved the debtor's petition, and appointed temporary trustees, to whom the superintendent of banks was directed to turn over the debtor's property in his possession.

▉ The first and most important question presented by this appeal is whether the District Court had jurisdiction over the debtor for the purpose of reorganization under section 77B. This section provides that "Any corporation which could become a bankrupt under section 4 of this Act [section 22 of this title] * * * may file an original petition." Section 4 of the Bankruptcy Act as amended (47 Stat. 47; 11 USCA § 22) reads as follows:

"Sec. 4. *Bankrupts; who may become.* (a) Any person, except a municipal, railroad, insurance, banking corporation, or a building and loan association, shall be entitled to the benefits of this Act [title] as a voluntary bankrupt.

"(b) * * * and any moneyed, business, or commercial corporation (except a municipal, railroad, insurance, or banking corporation, or a building and loan association) * * * may be adjudged an involuntary bankrupt."

The dispute is whether the debtor is either a banking corporation or an insurance corporation within the meaning of section 4.

The debtor was incorporated in 1919 under the article of the Banking Law, relating to investment companies. N. Y. Laws 1914, ch. 369, § 290 et seq. Its business has consisted in making mortgage loans on real estate and selling the mortgages to the public with its guaranty of payment. In some instances it sold the whole mortgage, guaranteeing payment by the mortgagor of principal and interest; in others, it assigned a mortgage to its affiliate, Prudence Bonds Corporation, which deposited it with a corporate trustee and issued participation certificates equal in the aggregate to the face amount of the mortgage, which certificates the debtor sold with its guaranty of payment. In still other instances, groups of mortgages were deposited as security for the affiliate's bonds, which the debtor sold with its guaranty. There is one issue of the debtor's own bonds secured by mortgages deposited with a corporate trustee. Its total sales of guaranteed investments amounted to more than $280,000,000. From the sale of mortgages the debtor realized an average profit of 5 per cent. of the face amount thereof. Another source of income was its guaranty, in consideration for which the debtor was permitted to collect the interest on the pledged mortgages and to retain one-half of 1 per cent. It was required by law to file a report annually with the superintendent of banks, and its advertising emphasized the fact that it was subject to the supervision of the state banking department.

Since rendition of the decision below, the field of discussion has been somewhat narrowed by our opinion in the case of In re Union Guarantee & Mortgage Co., 75 F.(2d) 984. There the question was whether the Union Guarantee & Mortgage Company was barred from the benefits of sec-

tion 77B as an "insurance company." Its business, like that of the debtor in the case at bar, was to make loans secured by real estate mortgages which it sold to its customers with a guaranty. It was incorporated under the New York Insurance Law (Consol. Laws, c. 28). In holding that it was an insurance company within the meaning of the Bankruptcy Act, we used the following language (75 F.(2d) 984, page 985):

"Now it is the powers conferred upon the company, not its activities, which are decisive. * * * If a state enacts that companies having powers of a prescribed kind must be regulated, that is of course authoritative; and, if in addition it classes the company as a bank or a railroad or an insurer, that too should be authoritative. [Citing cases.] This is true, not because Congress was bound to yield in such cases, but because otherwise its apparent purpose to leave the winding up of such companies to the state would not be effected; for the will of the state is no clearer to supervise the company than to class it as it does. When Congress excepted not all companies affected with a public interest, but specified kinds of such company, presumably it intended the states to define the kinds."

In reliance upon this case the appellants argue that the debtor must be deemed a banking corporation because the state has so classified it by permitting it to be incorporated under the Banking Law, subjecting it to supervision by the superintendent of banks, and providing a procedure by which the said superintendent might take it over for liquidation. But this argument proves too much, for it cannot be successfully contended that every corporation which may be formed under the New York Banking Law is a banking corporation. So much is recognized in the Banking Law itself, for it is entitled "An Act in relation to banking corporations * * * and corporations under the supervision of the banking department." Laws 1914, c. 369. Under the various articles of the Banking Law (Consol. Laws, c. 2) may be formed banks, trust companies, safe deposit companies, and investment companies. Banks are clearly within the phrase "banking corporations" as used in the title. It seems equally clear that safe deposit companies fall within the phrase "corporations under the supervision of the banking department." They have not the same powers as banks, and in common speech would never be referred to as "banking corporations." Therefore, even though the state has provided for the supervision and liquidation of safe deposit companies by the superintendent of banks, it cannot be maintained that the state has classed them as "banking corporations" with the result of excepting them from the field of bankruptcy under the principles declared in our opinion in the Union Guarantee & Mortgage Co. Case. We think that this is likewise true of a corporation formed under the article relating to investment companies—at least if, as in the case of the Prudence Company, Inc., such corporation has not acquired the powers of a bank. Banks are formed under article 3 (section 100 et seq.), and are expressly given power to discount commercial paper, to receive deposits, to deal in exchange, coin, and bullion, and to lend money on real or personal security. Investment companies are formed under article 12-A (section 505 et seq.), formerly article 7, and they may obtain all the above-mentioned powers of a bank. But the debtor never did obtain the power to receive deposits. There were two impediments. Section 508 forbids exercise of the power to receive deposits within the state of New York unless the investment company shall make a deposit of securities with the superintendent of banks. The debtor made no such deposit. Section 505 (3) forbids any investment company having an issue of preferred stock to exercise the power of receiving deposits. In 1926 the debtor issued $5,000,000 of preferred stock which is still outstanding. Hence the debtor does not possess the power to receive deposits, which is generally recognized as the essential characteristic of a banking business. In Oulton v. German Savings & L. Soc., 17 Wall. 109, 118, 21 L. Ed. 618, Mr. Justice Clifford stated that "Strictly speaking the term bank implies a place for the deposit of money, as that is the most obvious purpose of such an institution." And all of the cases, so far as we are advised, which have construed the words "banking corporation" as used in the Bankruptcy Act, have regarded the legal power to receive deposits as the essential thing. See Gamble v. Daniel, 39 F.(2d) 447, 450 (C. C. A. 8); State of Kansas v. Hayes, 62 F. (2d) 597, 598 (C. C. A. 10); Clemons v. Liberty Savings & Real Estate Corp., 61 F.(2d) 448, 450 (C. C. A. 5); Woolsey v. Security Trust Co., 74 F.(2d) 334, 337,

97 A. L. R. 1081 (C. C. A. 5). Moreover, the fact that the state Legislature has not imposed double liability upon the stockholders of investment companies, although article 8, section 7, of the State Constitution, provides for such liability in the case of every corporation "for banking purposes," lends additional support to the conclusion that the Legislature has not classified investment companies as banking corporations. Without departing from the principle that the character of a corporation is to be determined by the character of its charter powers, we may, and do, hold that the debtor was not a "banking corporation."

■ It is next contended that, if not a banking corporation, the debtor is an insurance corporation. Guaranties of mortgages and participation certificates have been authoritatively recognized as contracts of insurance. Bowers v. Lawyers' Mortgage Co., 285 U. S. 182, 189, 52 S. Ct. 350, 76 L. Ed. 690. To this the appellees reply that the state has not classified the debtor as an insurance company, since it was not organized under the Insurance Law, and consequently we cannot, consistently with In re Union Guarantee & Mortgage Co. (C. C. A.) 75 F.(2d) 984, hold the debtor exempt from bankruptcy as an insurer. We think this answer is sound. Although a corporation organized under the Banking Law as an investment company has power to guarantee the mortgages and participation certificates it sells, the element of insurance is but incidental to its mortgage business, and, in the words of Mr. Justice Butler in the case of Bowers v. Lawyers Mortgage Co., supra, "it certainly is not sufficient to make respondent an 'insurance company' within the meaning of that phrase as it is commonly used and understood." 285 U. S. 182, page 190, 52 S. Ct. 350, 354, 76 L. Ed. 690. Nor is the debtor classified as an insurance company by the state legislation; on the contrary, section 2 of the Banking Law expressly excludes from the definition of "investment company" an insurance company formed under the laws of New York or any other state. It is true that chapter 745 of the Laws of New York 1933 regards guaranty companies as of one classification, whether organized under the Banking Law or the Insurance Law, and states that they "are not amenable to the federal bankruptcy law" (section 1) and are subject to state control. But a declaration by a state that a certain class of corporations is not amenable to bankruptcy is brutum fulmen, unless the Bankruptcy Act itself excepts that class. See International Shoe Co. v. Pinkus, 278 U. S. 261, 49 S. Ct. 108, 73 L. Ed. 318. Since neither in common parlance nor by the terms of state legislation is the debtor regarded as an "insurance company," it cannot be exempt from bankruptcy under that phrase. We conclude, therefore, that the District Court had jurisdiction under section 77B of the Bankruptcy Act.

■ On January 24, 1935, the debtor's petition was filed pursuant to a vote of its board of directors. The appellants contend that the directors were without power to act because the superintendent of banks upon taking possession of the debtor's property and business became vested, pursuant to section 71 of the Banking Law (Consol. Laws, c. 2) with the exclusive authority to manage its affairs, including the prosecution or defense of all legal proceedings. It may be conceded that the ordinary functions of the directors were suspended by the superintendent's seizure. Lafayette Trust Co. v. Beggs, 213 N. Y. 280, 284, 107 N. E. 644; Isaac v. Marcus, 258 N. Y. 257, 264, 179 N. E. 487. For the purpose of performing his statutory duties he is vested with powers similar to those exercised by equity receivers. Matter of Union Bank, 204 N. Y. 313, 317, 97 N. E. 737; Lafayette Trust Co. v. Beggs, supra. It is well settled that the appointment of receivers for a corporation does not deprive its directors of the power to file a petition in bankruptcy. Struthers Furnace Co. v. Grant, 30 F.(2d) 576 (C. C. A. 6). See, also, Royal Indemnity Co. v. Am. Bond & Mortgage Co., 289 U. S. 165, 53 S. Ct. 551, 77 L. Ed. 1100. The filing of a petition in bankruptcy by the superintendent of banks could not be a step in the carrying out of his official duties, for it would necessarily terminate his stewardship and transfer into the custody of the bankruptcy court the property of which he was possessed. The statute should not be interpreted to confer such a power upon him; hence it remains with the directors. Indeed, a contrary interpretation would raise a serious question as to the constitutionality of the statute. The debtor's petition was properly authorized. Cf. In re Faour, 72 F.(2d) 719 (C. C. A. 2); In re Bajardi, 9 F.(2d) 797 (C. C. A. 2).

The final contention is that the petition was not filed in good faith. It will suffice to say that the District Judge found that

it was filed in good faith, and that nothing is advanced by the appellants to require, in our opinion, a reversal of that finding. Cf. Manati Sugar Co. v. Mock, 75 F.(2d) 284 (C. C. A. 2).

Order affirmed.