**Gurdeep Singh JOLLY, Plaintiff,**

v.

**Jesse A. PITTORE, Richard J. Westin, Stanley L. Seaman, Preferred Income Fund II Ltd. Partnership, and Westor Financial Group, Inc., Defendants.**

**Jyothi SRIRAM, and Varsha Tevar, as Custodian for Seema Tevar, Ami Tevar and Neel Tevar, Plaintiffs,**

v.

**Jesse A. PITTORE, Richard J. Westin, Stanley L. Seaman, Preferred Income Fund III Ltd. Partnership, and Westor Financial Group, Inc., Defendants.**

Nos. 92 Civ. 3593 (JSM), 92 Civ. 5244 (JSM).

United States District Court, S.D. New York.

July 22, 1994.

Henry A. Brachtl, Goodkind Labaton Rudoff & Sucharow, New York City, for plaintiffs.

Charles S. Bronitsky, Rubinstein & Perry, San Francisco, CA, for defendants.

## MEMORANDUM ORDER

### OPINION

MARTIN, District Judge.

On July 14, 1993, this Court entered an Order granting plaintiffs' application for dissolution of Preferred Income Fund II and Preferred Income Fund III, and granting the parties time to submit names of a person to be appointed liquidating trustee. Thereafter, counsel for defendants asked the Court for a certification pursuant to Rule 54(b) and a stay of the Court's order pending appeal. During the course of a telephone conference relating to that application, the Court indicated that it would deny the application for a stay and was prepared to appoint a liquidating trustee. Defendant's counsel, Mr. Bronitsky, asked for additional time to submit names to be considered for appointment as the trustee. In response, plaintiffs raised concerns that the defendants might attempt to file a bankruptcy proceeding during the period before the liquidating trustee might be named. The Court then required Mr. Bronitsky to represent that the defendants would not file petitions in bankruptcy during the period of time between that date and the naming of the liquidating trustee. By order dated August 18, 1993, the United States Court of Appeals for the Second Circuit granted a temporary stay of this Court's order until the matter could be heard by that court on Tuesday, August 31, 1993. By order filed on August 29, 1993, this Court ordered that Sheldon L. Solow be appointed liquidating trustee of both funds, but recognized that order would be stayed during the period of the stay granted by the Second Circuit.

By order dated August 31, 1993, the Second Circuit vacated the stay previously granted and denied defendants' application for a further stay pending appeal.

On September 2, 1993, the two Funds filed petitions in bankruptcy pursuant to petitions signed by defendant Pittore on August 31, 1993.

By letter dated September 2, 1993, counsel for plaintiffs requested a pre-motion conference in order to obtain permission of the Court to file a motion to hold defendants and their counsel in contempt of the Court's prior orders appointing the liquidating trustee. That matter was set down for a conference on October 14, 1993. At the outset of the proceeding on October 14, plaintiffs' counsel stated that he believed that there were grounds for criminal contempt. At that time, the Court noted that if criminal contempt proceedings were to be instituted it might be appropriate to appoint special counsel rather than have criminal contempt proceedings prosecuted by the attorney for the plaintiffs.

The Court then took the matter under advisement.

By order dated December 7, 1993, the Court ordered a hearing on whether the defendants should be held in civil contempt. A hearing was held on January 28, 1994, and an additional hearing was held on June 23, 1994.

■ The record before the Court clearly establishes that on September 2, 1993, when the funds filed petitions in bankruptcy, Westor and the individual defendants were aware of this Court's order appointing Sheldon Solow as liquidating trustee. Indeed, Westor, in a letter to investors in the two funds stated that they "were forced to act immediately in order to forestall the installation of a 'liquidating trustee called for by the judge's ruling....'"

The Court can think of no clearer evidence that the defendants acted with a deliberate purpose to disobey and frustrate the order of this Court appointing the liquidating trustee. The participation in this contempt by the individual defendants Pittore and Westin is established beyond any possible doubt. Pittore is Chairman of the Board of Directors and Chief Financial Officer of Westor, and he personally signed the bankruptcy petitions. Seaman is a Vice–President and director of Westor and he personally signed the September 2, 1993 letter to the investors advising them of Westor's contemptuous actions.

■ While the evidence of Westin's participation is not as strong it is clearly sufficient to establish by a preponderance of the evidence that Westin was also personally involved in the contempt of this Court's order. Westin was President and Principal Executive Officer of Westor as well as a substantial shareholder. In addition, like the other individual defendants, when directed to provide the Court with an affidavit setting forth his participation in the decision to make the bankruptcy filings, Westin filed an affidavit in which he asserted the Fifth Amendment privilege. In the context of a civil proceeding such as this, it is entirely appropriate for the Court to draw from that assertion an inference that Westin was a willing and knowledgeable participant in the decision to violate this Court's order. *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976).

■ With respect to the role of defendants' counsel in this action, Charles S. Bronitsky, the Court finds by a preponderance of the evidence that he, too, was a knowing and wilful participant in the scheme to attempt to frustrate this Court's order by filing a bankruptcy petition. Bronitsky was clearly on notice that this Court would view the filing of a bankruptcy petition as being inconsistent with the appointment of a liquidating trustee. Indeed, Bronitsky acknowledges that, in the telephone conference in which he sought additional time to submit the names of persons to be considered for the position of liquidating trustee, the Court indicated that it would be willing to grant such an extension only if he represented on behalf of the defendants that no attempt would be made to place the Funds into bankruptcy between that time and the time a liquidating trustee was appointed. While Bronitsky argues that he was not told at that time that the filing of a bankruptcy petition would be a contempt of the order appointing a liquidating trustee, it is difficult to imagine that he failed to recognize that the reason the Court asked for a representation that no bankruptcy filing would be made until the order designating the particular individual to serve as liquidating trustee was signed was because the Court was of the view that once an order appointing a specific person as the liquidating trustee was signed, any attempt to file a bankruptcy petition would be a direct violation of that order punishable by contempt.

Mr. Bronitsky's close involvement with the bankruptcy filing designed to frustrate this Court's order appointing the liquidating trustee is demonstrated by the fact within 32 minutes of the time the bankruptcy petitions were filed, Mr. Bronitsky's firm telecopied the notice of filing the petitions to his co-counsel here in New York. Finally, like the individual defendants, when directed by the Court to explain his involvement in the bankruptcy filings, Mr. Bronitsky did not do so, but rather asserted his Fifth Amendment privilege.

■ There can be no question that filing of the bankruptcy proceedings caused substantial expense to the Funds and, therefore, injury to their limited partners, the plaintiffs herein. It is appropriate, therefore, that Westor, the individual defendants, and Mr. Bronitsky be held jointly and severally liable in civil contempt for all expenses incurred by

the Trustee in connection with the bankruptcy proceedings.

The respondents argue that they acted in good faith on the belief that general partners could file bankruptcy proceedings after a liquidating trustee had been appointed. This argument is insufficient to deny the right to recover the fees and expenses caused by the bankruptcy for several reasons.

First, the evidence before the Court is overwhelming that the bankruptcy filings were not occasioned by any legitimate need to provide the partnerships with protection from their creditors, but rather were done solely to frustrate this Court's order appointing a liquidating trustee. Indeed, in denying a stay of the dismissal of the bankruptcy proceedings, Chief Judge Henderson of the Northern District of California noted:

> It is also extremely clear that PIF II fails to demonstrate a probability of success on the merits or the existence of a substantial legal question ... PIF II appears to have no real debt to reorganize.

In a footnote, the Court added:

> Indeed, based on our review we are inclined to agree with Judge Jellen's skepticism as to whether reorganization under the bankruptcy code was a legitimate action to begin with given the balance of assets and liabilities.

Second, the authority on which defendants rely in support of their claim that they had a right to file the bankruptcy proceedings is far from persuasive. Nowhere in the cases cited by defendants is there authority for the proposition that general partners may petition for bankruptcy on behalf of the partnership after a liquidating trustee has been appointed. Cases such as *In re Donald Verona & Bernard Green*, 126 B.R. 113 (Bankr. M.D.Fla.1991) (surviving partner of two person partnership may file Chapter 7 petition following death of partner); *In re B C & K Cattle Co.*, 84 B.R. 69 (Bankr.N.D.Tex.1988) (partner may file involuntary petition against partnership) are inapposite since they do not involve a situation where there is a court order transferring the authority to act on behalf of the partnership from the general partners to a liquidating trustee.

■ Nor are the respondents helped by cases such as *In re Prudence Co., Inc.*, 79 F.2d 77 (1935), which indicate that general partners or directors of corporations have the authority to institute bankruptcy proceedings following the appointment of an equity receiver. An equity receiver is appointed upon the application of creditors to take control of the debtor's assets for the benefit of the creditors. The receiver does not have the power, at least without special order of the court, to institute bankruptcy proceedings. *See Manhattan Rubber Manufacturing Company v. Lucey Manufacturing Company*, 5 F.2d 39, 42 (2d Cir.1925) (Learned Hand concurring). *See also In re Prudence Co., Inc.*, 79 F.2d 77 (2d Cir.1935); *Esbitt v. Dutch–American Mercantile Corp.*, 335 F.2d 141 (2d Cir.1964).

■ A person filing a voluntary bankruptcy petition on a partnership's behalf must be authorized to do so, and authorization must derive from state law. *See Price v. Gurney*, 324 U.S. 100, 106, 65 S.Ct. 513, 516, 89 L.Ed. 776 (1945). *See also Keenihan v. Heritage Press, Inc.*, 19 F.3d 1255 (8th Cir. 1994). Under Delaware Law it is the liquidating trustee who is to conclude the unfinished business of the corporation so as to finally terminate its existence. Delaware Code Annotated title 6 § 17–803. *See National Medical Properties, Inc.*, No. 6036, 5 Del J.Corp.L. 537, 1980 wl 3034, *2 (Del.Ch. 1980) citing DEL.CODE ANN. tit. 8, s 279. Indeed, the Second Circuit, in affirming this Court's appointment of a liquidating trustee, recognized that it was the liquidating trustee and not the general partners who had the power to determine how the dissolution of the partnership should be accomplished. *Sriram v. PIF III, Ltd.*, 22 F.3d 498, 502 (1994). Thus, the general partners had no authority to commence bankruptcy proceedings after the liquidating trustee was appointed.

■ Finally, this is a civil contempt proceeding. The Court therefore need not find such wilful conduct as would justify the imposition of criminal sanctions. All that is necessary for the Court to find is that the actions of the defendants and Mr. Bronitsky were in violation of this Court's order and that their actions caused the damage which is to be remedied by the order to be entered herein. *Canterbury Belts, Ltd. v. Lane Walker Rudkin, Ltd.*, 869 F.2d 34, 39 (2d

Cir.1989) (citing *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949)). Thus, even if each of the defendants and Mr. Bronitsky believed in good faith that they had the right to file the bankruptcy proceedings, the Court finds that their actions were, in fact, a violation of this Court's order which caused damage to the partnerships. Each of them is thus jointly and severally liable for the full amount of the costs and expenses incurred by the partnerships as a result of the bankruptcy proceedings. *See New York State N.O.W. v. Terry,* 886 F.2d 1339, 1352 (2d Cir.1989).

**SO ORDERED.**