### In re FOLEY.

### WITHERS BROS. v. FOLEY.

(Circuit Court of Appeals, Ninth Circuit. June 1, 1925.)

#### No. 4432.

Bankruptcy ⬤⇒467—Findings of fact by referee, approved by court, not open to review except for plain error.

Findings of fact by a referee, made on conflicting evidence and approved by the District Judge, will not be inquired into by an appellate court, except for plain and manifest error, and this rule is applicable to a contested application for discharge, where the motive and intent of bankrupt becomes material.

Ross, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; William P. James, Judge.

In the matter of E. Y. Foley, bankrupt. From an order granting discharge, Withers Bros. appeal. Affirmed.

See, also, 1 F.(2d) 568; 4 F.(2d) 152, 154.

I. Henry Harris, of Los Angeles, Cal., for appellant.

O. L. Everts, D. S. Ewing, and M. K. Wild, all of Fresno, Cal., for appellee.

Before ROSS, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. This is an appeal from an order granting a discharge in bankruptcy. The principal objections to the discharge were that an item of $7,699.29, represented by claim checks against the Western Pacific Railroad Company, a cash item of $200 in bank, and a share of stock or certificate of membership in a gun club, of the value of $1,500, were omitted from the schedules; that the claim checks were cashed by the bankrupt a few days after the filing of the involuntary petition, and that the share or certificate of membership in the gun club was transferred by the bankrupt to his son. The petition for a discharge and the objections thereto were referred to the referee in bankruptcy, for the purpose of hearing the objections and reporting his findings to the court.

The referee found that the bankrupt did not knowingly and fraudulently make a false oath or render a false account in relation to his proceedings in bankruptcy; that he did not knowingly or fraudulently conceal any of his assets from the trustee; that, although the bankrupt cashed checks in the amount of $7,699.29, which were in his possession at the time of filing the involuntary petition, and had in his office a certificate of membership in the Twenty-Eight Gun Club and approximately $200 in a checking account in the French-American Bank of San Francisco, nevertheless there was no testimony and no act on the part of the bankrupt which led the referee to believe that the bankrupt had any intention of concealing assets from the trustee; and that all of the above property was surrendered to the trustee as soon as the bankrupt was notified by the trustee that the property rightfully belonged to the bankrupt's estate. These findings were approved by the trial judge.

The rule is universally recognized that, where the testimony is conflicting and the findings of the referee are approved by the District Judge, the facts will not be inquired into by an appellate court, except for plain and manifest error. In re Dorr, 196 F. 292, 116 C. C. A. 112. This rule applies to applications for a discharge, as well as to all other matters in bankruptcy. Arenz v. Astoria Sav. Bank (C. C. A.) 281 F. 530; In re Empie (C. C. A.) 296 F. 672; Baker v. Bishop-Babcock-Becker Co., 220 F. 657, 136 C. C. A. 265. In the latter case the court said:

"Just what weight should be given to the finding of a referee or special master upon an application for a discharge, has been the subject of some difference of opinion among the courts; but we think it may fairly be stated that the consensus is that where a referee and special master's action is based upon conflicting testimony, and he heard and saw the witnesses, that his findings ought to be accepted, and not disturbed, unless it appears that he has made a plain mistake; and this is particularly true in cases involving the concealment of assets, where the motive and intent of the bankrupt becomes material. In this class of cases much weight is necessarily due to the conclusions of the tribunal which had the opportunity of seeing and observing the manner and deportment of the witnesses whose acts were called in question, or of those who may have been cognizant of the transaction."

Measured by this rule, whatever our individual opinions might be if the question were an open one, we are satisfied that the findings of the referee, concurred in by the trial judge, should not be disturbed.

The order is therefore affirmed.

ROSS, Circuit Judge (dissenting). In my opinion, the appellee should have been denied, instead of being granted, a discharge by the court below. The record in the case, as did the record in the kindred one, In the Matter of E. Y. Foley, Inc., Bankrupt, recently disposed of by this court, shows that Foley was a man of very large business experience, and well knew what was his property and what became the property of his creditors upon his bankruptcy.

It appears from the present record that on October 13, 1923, he verified his schedule in both estates, swearing that they contained a statement of all of his property, both real and personal, which statement, the evidence in this record shows, was untrue, in that it omitted these items of his property: (1) Twenty-three checks, aggregating $7,699.29, of the Western Pacific Railroad Company, payable to himself in payment of claims held by Foley against that company. (2) Cash in the amount of $200 to his credit in the French-American Bank of San Francisco. (3) A share of stock, representing one of a membership of 11 in a certain gun club, of the value of $1,500, according to his own estimate.

That share of stock, the bankrupt testified before the referee, he had sent to the secretary of the club, asking him to transfer it to his son, expecting, said the witness, "to go

East after Christmas"; but the testimony of the trustee of the bankrupt's estate, given before the referee, regarding that matter, was that he thought that it was about the 1st of December that he first learned of the existence of the gun club; that, when he went through the papers of the bankrupt, the stock certificate was not in its envelope, which envelope was marked "28 Gun Club" on the outside; that he then notified the secretary of the club not to transfer the certificate, except on his authority; that 5 or 6 days before December 21st he received a letter from the secretary of the club to the effect that the certificate had come to him with the request for its transfer, and asking the trustee what disposition he should make of it; that the trustee directed the secretary to send the certificate to him, which was done, being received about December 21st.

Regarding the 23 checks that, as we shall see, were finally admitted by the bankrupt, Foley, to have been received by him from the Western Pacific Railroad Company, the trustee, White, testified as follows:

"Prior to the examination of Mr. Foley, on December 21st, I had obtained information to the effect that one of the railroad companies had issued checks to Mr. Foley before September 13th. I developed that information myself, by various trips to San Francisco. I went to the French-American Bank, because on February, 1923, the mortgage on certain property was refinanced there for a larger amount, and I figured that there must be some friendly connection; otherwise they would not have refinanced at a period like that, and that a nonaccount. So I found through inquiry that Mr. Foley had an account with them. We had lists made out by various railroad companies of checks they had issued subsequently to January first, 1923, and then compared those with our records of claim checks deposited, and by process of elimination found those certain checks. Then I went to the railroad company office and inspected indorsements of those checks myself, and in the case of those checks that had indorsements thereon of the depositary banks of Foley, we obtained photographic copies, so that we would not have to trust to memory, and then took the various dates of deposit as shown by the cancellation, and went to the bank, and there was a record of the check deposited and checks having been cashed; that is, the 23 checks issued by the Western Pacific. They were cashed on the 15th of September in their collection or exchange department.

"Mr. Foley did not disclose to me prior to

December 21st that he had cashed any railroad checks after September 13th. I did not have any conversation with him in regard to the matter. Mr. Foley admitted in his examination that he had cashed some railroad checks or that he had taken them to the French-American Bank, and in exchange had gotten cashier's checks. He did not give me any other information at any time—that is, prior to the examination—about the railroad claim checks. I did not ask him for any information prior to the time he was examined. I did not ask him for information regarding the share of stock in the 28 Gun Club prior to the examination."

The record shows that, two days after the petition to have him adjudged a bankrupt was filed, the appellee took the 23 checks given him by the Western Pacific Railroad Company to San Francisco, and there received in exchange therefor from the French-American Bank two of its cashier's checks—one for $4,000, payable to the order of one C. W. Fay, and the other for $3,699.29 payable to the order of his nephew, N. M. Cook; all of which proceedings were kept secret by the bankrupt until developed in the course of his examination before the Referee in Bankruptcy the latter part of December, 1923. And so, too, with respect to the $200 that the bankrupt confessedly had to his credit in the French-American Bank at the time of filing his petition in bankruptcy.