SECURITY BUILDING & LOAN ASS'N et al.
v. SPURLOCK et al.
No. 7099.

Circuit Court of Appeals, Ninth Circuit.
June 6, 1933.

Rehearing Denied July 24, 1933.

Henderson Stockton, of Phœnix, Ariz., for appellant Security Building & Loan Ass'n.

Alexander B. Baker, Louis B. Whitney, and Lawrence L. Howe, all of Phœnix, Ariz., for appellant Dodt.

Alice M. Birdsall and Thomas W. Nealon, both of Phœnix, Ariz., for appellees.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

WILBUR, Circuit Judge.

The Security Building & Loan Association having been adjudged a bankrupt appeals from the order on the ground that it is exempt from the provisions of the Bankruptcy Act by reason of the amendment thereto enacted by Congress February 11, 1932, expressly excepting building and loan associations from the operation of the act (47 Stat. 47 [11 USCA § 22]). The order of the adjudication entered September 29, 1932, was based upon a finding therein contained that the petitioner was not in fact a building and loan association, and the appeal is prosecuted upon the claim that it is such an association. When the original petition for an involuntary adjudication of bankruptcy was filed January 5, 1932, the petitioning creditors alleged that the association was a building and loan association. Subsequently, other creditors intervened and joined in this allegation. The act of bankruptcy alleged was that a receiver had been appointed by

a state court to wind up the affairs of the corporation. On February 13, 1932, two days after the amendment to the bankruptcy act which excepted building and loan associations, a motion to dismiss was interposed. The trial court announced its intention to grant the motion unless the petition was amended within ten days. This the original petitioners formally declined to do, but the intervening creditors filed a timely amendment alleging that the association was not a building and loan association and upon the trial of the issues the court sustained this allegation. The appellants claim that the court erred in not dismissing the original petition which alleged that the appellant was a building and loan association for the reason that the petition showed on its face that the court had no jurisdiction. With this contention we cannot agree. If, as the court subsequently held, it had in fact acquired jurisdiction over the association by the filing of the original and intervening petitions, it was an exercise of sound discretion to permit the petition to be amended, nor could the creditors who had filed the original petition defeat the rights of the intervening creditors, equal to theirs, by themselves declining to amend. The appellees move to dismiss the appeal or in the alternative to affirm the adjudication upon the ground that the association is in the hands of the state receiver and consequently cannot be heard in its own behalf, and furthermore, that the receiver appointed in the state court is also without authority to appeal or to participate in this proceeding because not specially authorized so to do by the state court which appointed him. No direct authority supporting the doctrine is cited and none has been found denying the elementary right of self-defense in such a case. It has been held that pendency of a receivership action and the possession of the receiver does not prevent a corporation from filing a voluntary petition in bankruptcy [Struthers Furnace Co. v. Grant (C. C. A.) 30 F.(2d) 576; In re American & British Mfg. Corp. (D. C.) 300 F. 839, 849], nor from assenting to an involuntary one [In re Bankshares Corporation of United States (D. C.) 55 F.(2d) 335], a fortiori, it should have the right to protect itself from an involuntary one under similar circumstances. The jurisdiction of the federal court in such a case is superior to that of the state court. People of State of N. Y. v. Irving Trust Co., 288 U. S. 329, 53 S. Ct. 389, 77 L. Ed. —— (decided February 13, 1933), and cannot be affected or limited by or in the action in the state tribunal. Isaacs v. Hobbs, 282 U. S. 734, 737, 51 S.

Ct. 270, 75 L. Ed. 645, Isaac and Joel Gross v. Irving Trust Co., 53 S. Ct. 605, 77 L. Ed. ——, decided by the Supreme Court May 8, 1933. Whether or not the state receiver should be recognized is a moot question here, as he has in fact been heard in the lower court and in this court, he has joined in appeal, and if he has added nothing to its force he has subtracted nothing from it. The motions to dismiss, or, in the alternative, to affirm, will be denied.

This brings us to the main question in the case. Preliminarily thereto, however, it should be stated that the appellees object to the consideration of the sufficiency of the evidence to support the finding of the trial judge incorporated in the decree to the effect that the appellant was not a building and loan association, upon the ground that no exception thereto was taken at the time, neither was a finding of fact to the contrary requested. The rules of practice thus invoked are those applicable to the trial of an action at law, but are not applicable to a bankruptcy proceeding. It is the duty of this court on this appeal to review the evidence and form its independent judgment upon the sufficiency thereof to support the adjudication, with due regard to the power and duty of the trial court to determine the weight and credibility of the testimony, in case of a conflict in the testimony. See Arenz v. Astoria Sav. Bank (C. C. A.) 281 F. 530; In re Foley (C. C. A.) 6 F.(2d) 126; Carstens v. McLean (C. C. A.) 7 F.(2d) 322. In the case at bar there is no conflict in the testimony. The point involved resolves itself into the question as to whether or not under the undisputed facts the association is a building and loan association within the meaning of that term as used in the amendment to the Bankruptcy Act. It will be observed at the outset that there is no attempt in the Bankruptcy Act to define a building and loan association. It is suggested that this phrase, "building and loan association," might well be interpreted uniformly by the federal courts in exercising bankruptcy jurisdiction disregarding the definition thereof by the authorities of the individual states whether such definition is legislative or judicial, and that, consequently, we must seek for a reasonable definition of a term of general application and then determine whether the local legislation authorizes the incorporation of such a building and loan association and also whether the alleged bankrupt is such a corporation or association. However desirable such a conclusion might be, the fact is that a building and

loan association is entirely a creature of state statute and the statute authorizing its creation must necessarily define its characteristics. Consequently, we must look to the state statutes to determine the nature and character of the corporate organizations it authorizes to function as building and loan associations. It may be conceded that the mere name of "building and loan association" would not control in the determination of the question as to the character of the corporation, although the fact that the corporation is designated in its name and in its articles of incorporation as a building and loan association is certainly persuasive, if not controlling, evidence of its character.

It is manifest at the outset that we must recognize that at the time this amendment was passed many, if not all, of the states of the union had theretofore authorized the formation of building and loan associations described and characterized as such in the legislation authorizing the incorporation thereof. The reports of congressional committees hereinafter referred to indicate that each state had done so. It follows that when Congress enacted this legislation without any attempt to define the characteristics of the building and loan associations intended to be excluded from the operation of the Bankruptcy Act, it necessarily recognized the various definitions thereof in the statutes of the several states as indicating what constitutes a building and loan association in the respective states. To attempt by judicial construction to incorporate into the federal law some definition of a building and loan association would be in effect to legislate upon that subject. Congress was satisfied to take the state statutes as they found them and we must do so. This view is substantiated by the reports of the Congressional Committees which reported on the bill when pending before Congress. The report of the Judiciary Committee states the reasons for the adoption of the legislation in part as follows:

"When the national bankruptcy law was adopted it was thought wise to exempt from its operation municipal, railroad, insurance and banking corporations. At that time building and loan associations were not as extensive, and through oversight or otherwise, these associations were not included in the exemption. Every reason which obtains for exempting the corporations above referred to obtains in so far as building and loan associations are concerned. * * * No one connected with building and loan associations opposes this legislation. However, it has been suggested that by reason of the fact that in two states in the Union no law exists controlling building and loan associations that this might be a reason for not exempting these associations from the operation of the bankruptcy law. It will be remembered that if the bankruptcy law is not invoked in connection with building and loan associations that this in no way interferes with state equity laws and whether a state has supervisory control over building and loan associations or not those interested may at all times take advantage of state insolvency laws. Building and loan associations are of a peculiar nature, associations functioning almost exclusively in local communities. The deposits received are from local depositors and the securities taken are local securities. Therefore, it seems the part of wisdom to leave the administration of these matters in the local courts. * * * As the law now is, it is possible for a disgruntled stockholder in a building and loan association under certain conditions to file a petition against the association invoking the bankruptcy law. While the courts have been considerate in protecting the interests of these associations, yet in these times of uncertainty the filing of a petition virtually ruins the association and destroys the savings and ofttimes seriously impairs the securities of the association." (Rep. 98, 72d Congress, 1st Session, House Judiciary Committee; House Reports 2-659, 72d Congress, 1st Session.)

The report of the Senate Judiciary Committee on the bill states:

"The purpose of it is to make clear that building and loan associations do not come within the provisions of the bankruptcy act. There have been several decisions holding that a stockholder in a building and loan association is not a creditor within the meaning of the bankruptcy act, but filing of [in]voluntary petitions for bankruptcy for building and loan associations goes on in different parts of the country to the great inconvenience and annoyance of loan associations. This amendment puts the building [and] loan [associations] in the same class with municipal, railroad, insurance and banking corporations." (Senate Reports, 2-574, 72d Congress, 1st Session.) See, also to the same effect, statement of Chairman of Judiciary Committee Senator Hastings in relation thereto on consideration of the bill in the Senate (Vol. 75, Congressional Record, part 3, 72d Congress, 1st Session, pp. 2499, 2500). Matter in brackets is interpolated because clearly indicated.

It is clear from the amendment excepting building and loan associations that Congress intended to cede jurisdiction over these associations to the states and allow the affairs of such building and loan associations to be administered, and its assets distributed under the state laws and state supervision rather than under the Bankruptcy Act. The reports above quoted put the matter beyond doubt, if there is otherwise room for doubt.

We turn now to a consideration of the question of whether or not the appellant association is so organized as to be a building and loan association within the meaning of the state statutes authorizing the incorporation of building and loan associations to ascertain whether or not the trial court correctly determined the matter in issue as to the character of the association. No one would dispute, and it is not disputed here, that the definition of a building and loan association contained in the Arizona statute is in accord with the general conception of such organization throughout the United States. In fact that designation is the simplest form of building and loan association. Section 1, c. 76, Session Laws 1925 (Rev. Code of Ariz. 1928, § 612), states: "Organizations having for their object accumulation by the members of their money by periodical payments into the treasury thereof, to be invested, from time to time, in loans to the members upon real estate for home purposes." The Arizona law also provides that no corporation which is not a building and loan association shall use the words "building and loan association" in its name. Id., § 2 (Rev. Code 1928, § 613).

The articles of incorporation filed by the appellant purport on their face to be an acceptance of the provisions of the Arizona statute concerning the organization of building and loan associations and expressly authorize the corporation to exercise such powers as may be authorized by chapter 76 of the 1925 Session Laws of Arizona, supra (Rev. Code Ariz. 1928, § 612 et seq.), concerning building and loan associations. In compliance with this statute the articles used the name "Security Building and Loan Association"; designated the principal place of business of the corporation as Tucson, Ariz.; fixed the amount of the par value of its capital stock at $5,000,000 divided into 50,000 shares of $100 each, "which when issued shall be set apart as a fixed and permanent guaranteed capital"; provided "that additional working capital may be accumulated by the issuance of membership shares, units and certificates, both installment and fully paid as provided for in chapter 76, 1925 Arizona Session Laws, and the by-laws of this corporation"; fixed the term of its duration at 25 years; stated the names and residences of the persons who subscribed and acknowledged the declaration, all of whom are citizens of the state of Arizona; and contained a provision that the association was organized "jointly to do any and all other acts and things authorized by law and more particularly by and under chapter 31, 1922 Arizona Session Laws, chapter 11, 1923 Arizona Session Laws, and chapter 76, 1925 Arizona Session Laws, and for all other purposes and with all the rights, powers, privileges and immunities in said laws set forth." In accordance with the provisions of section 3 (Id. [Rev. Code 1928, § 614]) of that law an application was made to the superintendent of banks for permission to carry on the business of a building and loan association and the fee fixed by the superintendent of banks for the necessary investigation to determine whether or not the permit should be granted was paid. The incorporators deposited with the state treasurer of Arizona certificates of deposit of an aggregate value of $50,000 and four notes and four mortgages in the aggregate sum of $10,000. These deposits were approved by the superintendent of banks of the state of Arizona and on March 12, 1929, a permit or license to do business as a building and loan association for the fiscal year ending June 30, 1929, was issued by him, for which a $5.00 fee was paid as required for the issuance of the permit. Subsequent permits were issued in like manner. These permits certified that the corporation had complied with the provisions of the Arizona Code relating to the banking and building and loan associations and was authorized to do the business thereof subject to the laws of Arizona. The statute provides that no appeal may be taken from the decision of the superintendent of banks with respect to the application. Id., § 3. Section 12 of the act (Rev. Code 1928, § 623) requires that a reserve fund be set up and the by-laws so provided. We thus have a corporation which by its name purports to be a building and loan association. Its organizers complied with the formalities required by the laws of Arizona for the incorporation of building and loan associations. Appropriate authorities of the state investigated its form of organization and approved it and expressly authorized it to transact the business of a building and loan association. Appellees do not seriously question that it was empowered to transact business as a building and loan association.

If we accept and follow the decision of the Circuit Court of Appeals of the Fifth Circuit in Clemons v. Liberty Co., 61 F.(2d) 448, which holds that for the purpose of the bankruptcy act the status of the corporation is fixed by charter, it would follow that the appellant association is a building and loan association. The appellees contend that although the form of organization of the appellant corporation was that of a building and loan association, there were several defects in that organization which deprive it of the character of building and loan association.

It is pointed out that under the articles of incorporation all the stock subscribed ($50,-000) had been subscribed by another corporation, the Arizona Holding Company; that $50,000 paid-up shares of stock had been issued to that corporation; that the articles of incorporation made no provision for memberships other than stockholder memberships, consequently, it is claimed that the fundamental characteristics of building and loan association are lacking, as defined by the Arizona statute above quoted which contemplates that the mutual savings of members be gathered and loaned to the members. The by-laws, however, do provide for the sale of 5,000 shares of stock in installments payable at such times as may be ordered by the board of directors, 50 per cent. thereof at the time of the subscription. They also provide that the board of directors shall have power to lend funds of the corporation "upon such securities as are provided by law, and to prescribe the terms and conditions upon which loans may be made," and for the repayment of such loans in installments with interest, etc. The by-laws also provide for the issuance of membership shares paid for in installments or at par and with the right on the part of such members to vote. We need not go into the further provisions of the by-laws with reference to the method of organization. These by-laws were adopted in conformity with the requirements of the statute and in part define the powers of the corporation. In view of these circumstances the association was a building and loan association de jure within the meaning of the laws of Arizona and it was so declared to be by the appropriate officers of the state. We think it clear that it comes within the exception to the bankruptcy act adopted in February, 1932, and that the order of the court adjudging the association a bankrupt and assuming jurisdiction over its affairs was erroneous.

Order reversed.