**In re FAMILY HEALTH SERVICES, INC. et al., Debtors.**

**In re MAXICARE HEALTH INSURANCE COMPANY, Debtor.**

**Bankruptcy Nos. SA89–01549JW to SA89–01594JW, SA89–02535JW and SA89–02536JW.**

United States Bankruptcy Court, C.D. California.

Aug. 14, 1989.

See also, Bkrtcy., 104 B.R. 268.

Myerson & Kuhn, Los Angeles, Cal., for debtors.

Fred Nepple, Office of the Com'r of Ins., Madison, Wis., Gen. Counsel, Office of the Com'r of Ins.

Manatt, Phelps, Rothenberg & Phillips, Los Angeles, Cal., for Robert D. Haase, Com'r of Ins., State of Wis.

Sidley & Austin, Los Angeles, Cal., for Bondholders' Committee.

Danning, Gill, Gould, Diamond & Spector, Los Angeles, Cal., for Creditors' Committee.

## MEMORANDUM OF DECISION

JOHN J. WILSON, Bankruptcy Judge.

This matter comes before the Court on the motion of the Commissioner of Insurance for the State of Wisconsin to dismiss the petition filed by Maxicare Health Insurance Company (MHIC) for relief under Chapter 11 of the Bankruptcy Code. Group Health Association of America filed an amicus curiae brief in support of the motion and the debtor opposed the motion.

## BACKGROUND

Family Health Services, Inc. and 45 related corporations, including MHIC, filed for relief under Chapter 11 of the Bankruptcy Code on March 15, 1989. Subsequently, two affiliated corporations also filed Chapter 11 petitions. The 48 cases were consolidated for joint administration under Family Health Services, Inc., however, the debtors are commonly and collectively known as "Maxicare." According to the petitions, assets of Maxicare total $2.1 billion and liabilities are $1.4 billion. It appears that there are in excess of 100,000 creditors plus an unknown number of the one million current and former members of Maxicare health plans who may have claims. Maxicare operates a national network of health maintenance organizations (HMOs) which furnish health care services to approxi-

mately 440,000 people.[1] Plan members (also called enrollees) pay a fixed monthly fee, usually through their employer, and are eligible for all covered routine and emergency medical services. Hospitals, doctors, and individual health care professionals provide services to plan members under two fee arrangements with Maxicare. A health care provider agrees either to deliver medical care for a fixed monthly charge, a "capitation" fee, or to render services on a fee for service basis.

MHIC is a member of the Maxicare network. At the top of the Maxicare corporate pyramid is Maxicare Health Plans, Inc., a publicly held California corporation. Maxicare Health Plans, Inc. owns 100% of the stock of Maxicare, Inc., a holding company which is also incorporated in California. Maxicare, Inc. owns 100% of the stock of Maxicare Health Plans of the Midwest, Inc., an Illinois corporation, which in turn owns 100% of Maxicare Health Insurance Company.

MHIC, as an HMO in the Maxicare network, constitutes part of a large integrated and interdependent system for the provision of health care to Maxicare enrollees. Maxicare provides essential operational, administrative and managerial services, as well as centralized budget planning and marketing for the entire network of Maxicare HMOs. (Ruegger Decl. Ex. A., pp. 7–8).

The clearest evidence of the interrelationship between the Maxicare entities is Maxicare's cash management system. Maxicare HMOs transmit daily both bills and funds to Maxicare, Inc., Maxicare's California HMO. Maxicare, in turn, uses the funds received to pay debts as they are incurred throughout the Maxicare network. Maxicare also lends money to Maxicare HMOs, with such transfers being recorded on the books and records of the individual HMOs. Further, MHIC, along with the other Maxicare entities, submits consolidated financial statements reflecting the overall financial

health of the Maxicare network. (Ruegger Decl. Ex. A., p. 17).

MHIC is a Wisconsin corporation doing business only within that state. HMOs and insurance companies in Wisconsin are regulated pursuant to the provisions of the Insurance Code and under the supervision of the Commissioner of Insurance. Wis.Stat. Ann. Chs. 600–655 (West 1980 & Supp. 1988).

### JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1334(a), (d); 28 U.S.C. § 157(b)(2)(A), (O), and general order No. 266 of the United States District Court for the Central District of California.

### ISSUES

The issues are: 1. Is MHIC a "domestic insurance company" and therefore not eligible to be a debtor under sections 109(b)(2) and 109(d) of the Bankruptcy Code? 11 U.S.C. § 109(b)(2), (d). 2. Should the MHIC petition for relief be dismissed for cause as a "bad faith filing" under section 1112(b)? 11 U.S.C. § 1112(b).

### ANALYSIS

Section 109(a) defines who may be a debtor as a person that resides or has a domicile, a place of business, or property in the United States and the term "person" includes individuals, partnerships, and corporations. 11 U.S.C. §§ 109(a), 101(35). The specific exceptions in subsections (b) through (f) of section 109 are the only limits on this broad definition of who may be a debtor.

The applicable subsections of section 109 provide:

(b) A person may be a debtor under chapter 7 of this title only if such person is not—

. . . . .

(2) a domestic insurance company, . . .

. . . . .

---

**1.** In recent hearings, the president and CEO of Maxicare reported that almost one million people were enrolled in Maxicare at the end of

1988. When the cases were filed Maxicare had approximately 600,000 members. The debtor has estimated its current enrollment at 440,000.

(d) Only a person that may be a debtor under chapter 7 of this title, . . . . may be a debtor under chapter 11 of this title.

11 U.S.C. § 109(b)(2), (d). Section 109 excludes railroads, domestic insurance companies and banking institutions from eligibility for chapter 7 relief. In general, to proceed under Chapter 11 an entity must be eligible for Chapter 7 relief.

In determining whether an entity is excluded from seeking bankruptcy relief under section 109, federal courts have followed one or more of several approaches. The process of applying traditional rules of statutory construction has come to be known as the *independent classification test.* Courts may consider the classification of an entity under state law, thereby applying the *state classification test,* and a third approach has been used labeled the *alternate relief test.* This court applied all three tests to determine similar motions filed by Arizona, Illinois, Indiana, Louisiana, Ohio and Texas. However, the facts of the case at bench differ significantly from the prior cases.

The Wisconsin Commissioner presents a persuasive argument under the state law test for classification of MHIC as a domestic insurance company, whereas, the Regulators representing the above mentioned states presented no compelling arguments in their favor. In addition, it appears that the decision would differ depending on whether the state classification or independent classification test is controlling. Consequently, in analyzing the facts of this case, the court uses criteria and factors from all three tests and determines that as an HMO, MHIC is eligible for Chapter 11 relief.

### STATE CLASSIFICATION TEST

Under the state classification test the court examines the law of the state of incorporation to determine the character of an entity for section 109 purposes. The analysis begins with whether the state law classifies the entity as one specifically excluded from being a debtor under section 109(b)(2). *In re Cash Currency Exchange, Inc.,* 762 F.2d 542, 548 (7th Cir.1985), *cert.* *denied,* 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985). According to the court's analysis, Wisconsin has enacted legislation which classifies MHIC and other HMOs as domestic insurance companies.

The formation and regulation of corporations operating HMOs in Wisconsin are governed by provisions of the Wisconsin Insurance Code and the Wisconsin Commissioner of Insurance supervises their operation. Wis.Stat.Ann. § 609.001–.70 (West Supp.1988). Under § 609.01(2), an entity operating an HMO must incorporate as a stock insurance company, a service insurance company or a fraternal benefit society. Wis.Stat.Ann. § 609.01(2) (West Supp. 1988). The Commissioner issues a certificate of authority to transact the business of insurance to all companies intending to operate HMOs. Wis.Stat.Ann. § 601.04 (West 1980 & Supp.1988). Thus, Wisconsin's statutes require that companies arranging health care services must organize as insurance companies.

MHIC complied with these statutory requirements. The articles of incorporation filed by MHIC state the purpose of the corporation is to transact all kinds of insurance except those specifically excluded. (Motion Ex. B) MHIC operated in Wisconsin under a certificate authorizing it to transact the business of disability insurance. (Motion Ex. A) Even the corporate name of the debtor, Maxicare Health Insurance Company, includes the term "insurance company." Some courts have suggested that the inquiry is complete if the state classifies the entity as one specifically excluded by section 109(b) from being a debtor. *Cash Currency,* 762 F.2d at 548. The Ninth Circuit dealt with this issue in *Security Building & Loan Ass'n v. Spurlock,* 65 F.2d 768 (9th Cir.1933.)

In *Spurlock,* the bankrupt appealed from an involuntary petition which designated the bankrupt as a building and loan association. One month after the petition was filed, the Bankruptcy Act was amended to exclude building and loan associations from eligibility for bankruptcy relief. Absent a definition or other guidance within the Act, the appellate court reasoned that a building

and loan association was "entirely a creature of state statute and the statute authorizing its creation must necessarily define its characteristics." *Id.* at 771. The court opinion noted that the name of the debtor and the designation in its articles of incorporation as a building and loan association were persuasive if not controlling evidence of its character, though name alone would not be "determinative." *Id.* Before comparing the articles of incorporation with the state statutes, the court observed that the statute reflected the general conception of a building and loan throughout the United States. *Id.* at 772. The court ruled that the bankrupt was a building and loan association and therefore excluded from bankruptcy relief. In this case the debtor represents itself in its corporate name and articles of incorporation as a domestic insurance company. According to *Spurlock*, this is persuasive evidence that MHIC is a domestic insurance company.

The Wisconsin Commissioner would prevail if the controlling authority is the classification prescribed by Wisconsin law. Clearly, Wisconsin enacted statutes designed to regulate HMOs as insurance companies. However, Congress dictates which entities are precluded from seeking bankruptcy relief and Congress has not delegated that authority to the states. Therefore, a state can never transform an eligible entity, such as an HMO, into an insurance company, which is ineligible under section 109. In this case, it is not enough for Wisconsin law to charter a corporation as an insurance company. Congress intended to exclude companies which are not merely named and organized as insurance companies but which actually conduct the business of insurance.

According to the Seventh Circuit in *Cash Currency*, "[i]f the state law classifies the entity as one that is specifically excluded from being a debtor under section 109(b)(2), *the inquiry generally ends there.*" *Cash Currency*, 762 F.2d at 548 (emphasis added). This observation by the Seventh Circuit offers guidance, not an absolute prohibition against a more thorough analysis beyond the literal application of state statutes. As suggested by the court in *Cash Currency*, this court may conduct a functional analysis, comparing the powers of the entity to be classified with those of entities excluded from bankruptcy relief. *Id.* at 548.

A functional analysis examines the criteria used by the state to determine the classification. As long as there is a rational basis for the classification, the federal bankruptcy court may decide the issue using the state law method. If, however, the basis for Wisconsin's classification is suspect, then the court may reject the conclusion urged by the Commissioner.

## FUNCTIONAL ANALYSIS

Under a functional analysis this court determines whether MHIC exercises the same powers as domestic insurance companies which are excluded under section 109. For example, the Seventh Circuit ruled that a currency exchange was not a banking corporation excluded from the jurisdiction of the bankruptcy court because a currency exchange, although similar to a bank in many respects, lacked the statutory power to accept deposits. *Cash Currency*, 762 F.2d at 550. In the case before this court, the powers of MHIC are compared with those of a domestic insurance company to determine whether they are substantially equivalent entities. The Commissioner conceded that MHIC limits its business to issuing HMO policies, therefore, this court's functional analysis compares the powers of an HMO with those of an insurance company. (Motion pp. 7–8).

The distinctive function of an HMO is the ability to provide medical services to its members, and insurance companies as a rule do not exercise this function. *Jordan v. Group Health Ass'n*, 107 F.2d 239, 247 (D.C.Cir.1939). In considering whether Group Health Association was illegally engaged in the business of insurance, the *Jordan* court recognized the substantial difference between Group Health Association's agreement to provide medical services and an insurance company's contract to reimburse the cost when or after the service is rendered. *Id.* The court focused

not on whether risk was involved but on the primary object or purpose of the medical services plan, and determined that Group Health Association was not subject to state insurance laws. *Id.* at 248. Furnishing medical services is clearly not a traditional function of insurance companies.

The central indispensable element of an insurance company is the underwriting or spreading of risk. *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 212, 99 S.Ct. 1067, 1073, 59 L.Ed.2d 261 (1979), *reh'g denied*, 441 U.S. 917, 99 S.Ct. 2017, 60 L.Ed.2d 389 (1979), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 925 (1985). At issue in *Royal Drug* was the validity of price-fixing agreements between pharmacies and a health care insurer. The pharmacies agreed to charge policyholders $2.00 for each prescription drug and receive reimbursement of the cost of acquiring the drug from the insurer. The agreements were entitled to a limited exemption from federal antitrust statutes if the activity was the "business of insurance" for purposes of the McCarran–Ferguson Act. 15 U.S.C. § 1012(b). In defining the "business of insurance," the Court looked to the legislative history of the McCarran–Ferguson Act.

The Supreme Court found that Congress distinguished insurance companies which distribute risk according to hazard, experience and the law of averages, from enterprises, such as manufacturers, which have the ability to control costs. *Royal Drug*, 440 U.S. at 221, 99 S.Ct. at 1078. Since the agreements were arrangements designed to minimize the costs of purchasing goods and services, the Court concluded that the pharmacy agreements were not the "business of insurance." *Id.* at 224, 230, 232, 99 S.Ct. at 1079, 1082, 1083. Thus, the ability to control costs, the foundation of the HMO concept, also distinguishes HMOs from traditional notions of insurance. An HMO can choose the providers of medical services with which it will contract to care for its enrollees. To a great extent Maxicare has contracted with and pays health care providers a fixed sum, which will not increase or decrease in relation to the actual servic-

es rendered. For these reasons, an HMO and an insurance company cannot be viewed as equivalents.

Application of the state classification test yields conflicting results. Wisconsin law classifies MHIC as a domestic insurance company, but under a functional examination, MHIC exercises the powers of an HMO. The conflict between the state's classification of MHIC and the actual functions performed by that entity undermines the validity of the state classification test as applied in this case. Having reached no compelling conclusion under the state classification test, the court continues the section 109(b) analysis by applying the independent classification test.

## INDEPENDENT CLASSIFICATION TEST

The independent classification test is based upon the court's own construction of the Bankruptcy Code. 2 *Collier On Bankruptcy* ¶ 109.02 (15th ed.1989). The test is essentially statutory construction by another name. In applying the test, courts have adopted a common sense approach guided by legislative history and traditional rules of statutory construction. *In re Cash Currency, Exchange, Inc.*, 37 B.R. 617, 621 (N.D.Ill.1984), *aff'd*, 762 F.2d 542 (7th Cir. 1985), *cert. denied*, 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985).

Beginning with the language of section 109, a "domestic insurance company" may not be a debtor under the Bankruptcy Code. 11 U.S.C. § 109(b), (d). The Code neither defines the term, domestic insurance company, nor mentions health maintenance organizations. Absent a definition, it is left to the courts to determine what entities Congress intended to exclude from bankruptcy relief under section 109. Accordingly, the court looks to the legislative history for guidance in defining and applying the terms of a statute.

## LEGISLATIVE HISTORY

Certain corporations have been excluded from bankruptcy relief since the Act of 1867, under which only "moneyed, busi-

ness, or commercial corporations" were eligible for bankruptcy relief. Sovern, *Section 4 of the Bankruptcy Act: The Excluded Corporations*, 42 Minn.L.Rev. 171, 172–73 (1957). The Bankruptcy Act of 1898 excluded all corporations from voluntary bankruptcy and limited involuntary proceedings in general to corporations "engaged principally in manufacturing, trading, printing, publishing or mercantile pursuits," and specifically barred involuntary proceedings against banks. *Id.* at 175. During consideration of the bills which became the Bankruptcy Act of 1898, one statesman, Congressman Bodine, supported specific section 4 exclusions and urged that only corporations engaged in business usually conducted by individuals should be eligible for relief under the federal bankruptcy laws. *Id.* at 174. He argued that since states regulate and monitor the affairs of insolvent insurance companies, building and loan associations, trust companies, savings banks and state banks, the duties of a trustee in bankruptcy were already performed by the states. *Id.* This argument failed to persuade his colleagues in 1898, however, by 1932 all except one of the bankruptcy exclusions suggested by him were adopted. *Id.* at 174–75. It is difficult if not impossible to determine whether Congress relied in whole, in part, or at all on the reasoning of Congressman Bodine when it adopted his suggestions over the subsequent thirty year period. However, Mr. Bodine's reasoning was adopted by several courts to explain the exclusion of banks, insurance corporations and building and loan associations. *Id.* at 175 (citing *Sims v. Fidelity Assurance Ass'n*, 129 F.2d 442, 449 (4th Cir.1942), *aff'd*, 318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032 (1943); *In re Union Guarantee & Mortgage Co.*, 75 F.2d 984 (2d Cir.), *cert. denied*, 296 U.S. 594, 56 S.Ct. 142, 80 L.Ed. 421 (1935); *Woolsey v. Security Trust Co.*, 74 F.2d 334, 337 (5th Cir.1935)). Indeed the judicially created state classification test appears to be largely based on the reasons for exclusion proposed by Congressman Bodine.

The first statutory reference to insurance companies appeared in the 1910 amendment to section 4. As amended, section 4 opened voluntary bankruptcy relief to corporations, except municipal, railroad, insurance and banking corporations, and creditors could file involuntary proceedings against any "moneyed, business, or commercial corporation, except a municipal, railroad, insurance or banking corporation." *Id.* at 176. The House and Senate reports, which were identical, explained this change saying that banks are currently excepted, and "[o]ther business entities having similar responsibilities to the public are now excepted." *Id.* The evolution of section 4 continued in 1932 when building and loan associations were added to the list of excluded corporations. *Id.* at 177. The reported reason for this exception was that building and loans were local institutions. *Id.* This reasoning does not explain exclusion of insurance companies which operate statewide if not nationwide.

The federal bankruptcy laws offered neither individuals nor corporations an alternative to liquidation until 1934 when Congress enacted reorganization provisions. *Id.* at 178. Under section 77B, any corporation eligible for bankruptcy relief under section 4 could elect corporate reorganization. *Id.* The adoption of the same exclusion for reorganization as well as liquidation continued when Chapter X and Chapter XI were enacted. *Id.* at 179. The legislative history contains no explanation as to why the liquidation standard for eligibility was adopted for reorganization. *Id.* Congress excluded specific entities, including insurance companies, from federally administered liquidation proceedings before rehabilitation was an option. With section 4 in place when Congress enacted reorganization provisions, it was probably merely convenient to adopt the same exclusions for rehabilitation as for liquidation. *Id.*

Section 109 of the Bankruptcy Code adopted the insurance company exclusion under the Bankruptcy Act, adding the words "domestic" and "foreign" to clarify when bankruptcy laws may apply to foreign insurance companies. S.Rep. No. 989, 95th Cong., 2d Sess. 31, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5817;

H.R.Rep. No. 595, 95th Cong., 1st Sess. 318, *reprinted in* 1978 U.S.Code Cong. & Ad.News 6275 [hereinafter 95th Cong. Reports]. Before codification, section four of the Bankruptcy Act (11 U.S.C. § 22) provided: "Any person, except a municipal, railroad, insurance, or banking corporation or a' building and loan association, shall be entitled to the benefits of this Act as a voluntary bankrupt." 11 U.S.C. § 22 (repealed 1978). The section 4 insurance company exclusion was continued essentially unaltered as section 109 of the Code.

When the Bankruptcy Act was codified in 1978, the congressional reports state that banking institutions and insurance companies are excluded from liquidation under bankruptcy laws because various regulatory laws provide for their liquidation. 95th Cong. Reports, *supra.* The report included no further explanation, thus, no definition of "insurance company" or clear policy supporting the exclusion may be gleaned from the legislative history of either the Bankruptcy Act or the Bankruptcy Code. Absent guidance from the legislative history of section 109, the court applies traditional rules of statutory construction to determine what entities Congress intended to exclude from bankruptcy relief under section 109.

## STATUTORY CONSTRUCTION

■ The general rule of statutory construction is that the enumeration of exclusions from the operation of a statute indicates that the statute applies to all cases not specifically excluded. *Expressio unius est exclusio alterius.* 2A *Sutherland Statutory Construction* § 47.23 (Sands 4th ed.1984). As the Seventh Circuit concluded:

If Congress had intended to make the list of excluded entities illustrative rather than exhaustive, it could have used the

rule of statutory construction found in the Bankruptcy Code which provides that the words " 'includes' and 'including' are not limiting." 11 U.S.C. § 102(3). Because Congress chose not to do so, we conclude that the list of excluded entities is intended to be exhaustive.

*Cash Currency,* 762 F.2d at 552.

■ Section 109 broadly defines who may be a debtor subject to a specific and exhaustive list of exclusions. Congress, in choosing to exempt certain organizations from the operation of the bankruptcy laws, must be presumed to narrowly circumscribe the limits of this exemption. *In re Southern Indus. Banking Corp.,* 59 B.R. 978, 982 (E.D.Tenn.1986). Absent affirmative action by Congress to expand the application of this provision, section 109 must be narrowly construed.

Insurance companies have been specifically excluded from bankruptcy relief since 1910. Sovern, *supra,* at 176. The only change in this exception was the addition in 1978 of the words "domestic" ·and "foreign" to clarify when bankruptcy laws may apply to foreign insurance companies. Congress chose not to expand or modify the substance of the exception despite two clear opportunities for revision: first, when the Act was codified in 1978 and again, when section 109(b)(2) was amended in 1982.[2] Congress did modify section 109(b) when it expanded the definition of "bank" to include six additional banking entities "or similar institution which is an insured bank." 11 U.S.C. § 109(b)(2). But it did not add similar language to exclude entities that are similar or substantially equivalent to insurance companies.[3]

The legislative history reveals no clear policy underlying the exclusion of insurance companies from federal bankruptcy laws. Without the benefit of manifest Con-

**2.** It is clear that Congress was aware of the existence of HMOs when the Code was enacted in 1978. For example, in 1973, Congress passed federal HMO legislation "to provide assistance and encouragement for the establishment and expansion of health maintenance organizations." S.Rep. No. 129, 93th Cong. 1st Sess. 4, *reprinted in* 1973 U.S.Code Cong. & Ad.News 3033; 42 U.S.C. §§ 300e to 300e–17.

**3.** In a similar case involving the bank exclusion, the Seventh Circuit observed that from the failure to include currency exchanges in section 109(b)(2), it may be inferred that Congress intended to make them eligible for bankruptcy relief. *Cash Currency,* 762 F.2d at 552 n. 11.

gressional intent, the burden falls on the court to interpret statutes. It is this court's view that MHIC, which clearly operates not as an insurance company, but as an HMO, is eligible for Chapter 11 relief since HMOs are not specifically excluded by section 109.

The court reaches inconsistent conclusions by applying the state and independent classification analyses. Under Wisconsin law, MHIC is incorporated as an insurance company and is empowered to transact the business of disability insurance, yet a functional analysis reveals that MHIC actually conducted the business of an HMO. Thus, application of the state classification test yields no compelling result, but this analysis weighs in favor of the Commissioner. In contrast, if the court construes section 109 under the independent analysis and narrowly interprets the statute to exclude only insurance companies, not HMOs, Maxicare prevails. To determine whether an HMO, such as MHIC, is eligible for bankruptcy relief and thereby resolve the conflicting results of the state and independent classification tests, the court turns to an examination of the policies upon which the Bankruptcy Code is based.

### ALTERNATE RELIEF TEST

█ The alternate relief test emphasizes the policies underlying federal bankruptcy laws in determining eligibility for bankruptcy relief under section 109(b)(2). *In re Republic Trust & Sav. Co.,* 59 B.R. 606, 614 (Bankr.N.D.Okla.1986). In crafting the alternate relief approach, the court relied on the broad discretion vested in the bankruptcy courts to serve the purpose and intent of the Bankruptcy Code. The test emphasizes "congressional intent and factors of practicality and policy" thereby combining elements of the state and independent classification tests and adding policy considerations. *Id.* In general, "courts should consider whether a bankruptcy proceeding is a satisfactory method, compared with available State and Federal non-bankruptcy methods, of reorganizing or liquidating a would-be debtor." *Id.* In essence is a Chapter 11 reorganization proceeding a

satisfactory alternative to the statutory liquidation and rehabilitation provisions of Wisconsin law?

By proceeding under federal bankruptcy statutes, unsecured creditors of MHIC receive the benefit of powers not available to the Commissioner under the Wisconsin statutes. For example, the committee of unsecured creditors appointed pursuant to section 1102 has authority under section 1103 to investigate the conduct and financial condition of the debtor. 11 U.S.C. §§ 1102, 1103. This committee is an active participant in the case and has the fiduciary duty to act in the best interests of all the unsecured creditors. No similar provision exists under the state insolvency procedures governing Wisconsin.

Wisconsin law grants a priority for payment of claims filed by members enrolled in MHIC. Wis.Stat.Ann. § 645.68(3) (West 1980). This preferential treatment of loss claimants is anathema to the tenet of federal bankruptcy law. Equal treatment and distribution to all creditors is the heart of federal bankruptcy policy. The federal bankruptcy court, with its nationwide jurisdiction and its broad equitable powers, has the ability to reorganize the entire Maxicare network and to ensure equitable treatment for all creditors, not just creditors from Wisconsin. If the choice here is between a state liquidation of MHIC and a global federal reorganization of the debtor and over forty related entities, the practical and policy factors support the conclusion that a proceeding under Chapter 11 is the preferred method of reorganizing MHIC.

█ The Bankruptcy Code and Rules establish a nationwide, uniform and pervasive system for the reorganization of financially distressed companies. Corporations do business in many states where they maintain offices, own property and employ workers. They may operate through divisions or, as with Maxicare, through a system of wholly owned subsidiary corporations. Federal bankruptcy law applies uniformly to most business entities without regard to state law differences except where the bankruptcy court is obliged to

adopt state substantive law. And even then it is the bankruptcy court in a bankruptcy proceeding which applies state law.

The clear policy of the Bankruptcy Code is for uniform laws. Debtors, creditors, shareholders and other interested parties need look only to federal bankruptcy law when issues of reorganization or liquidation arise. To permit some states to liquidate segments of a multistate business leaving other parts of the business to be reorganized in a bankruptcy proceeding would lead to confusion, if not chaos, lack of consistency rather than uniformity, and uncertainty rather than predictability. The piecemeal administration of a complex multistate corporation may well deny a debtor the opportunity to effectively reorganize. MHIC, operating as part of an integrated network of over forty Maxicare subsidiaries, can and should be reorganized within the jurisdiction of one court, the federal bankruptcy court.

Courts must balance competing policies when deciding questions of exclusion under section 109. The Bankruptcy Code is a comprehensive system of laws which governs bankruptcy proceedings nationwide. The federal system offers voluntary debtors a choice between rehabilitating their financial affairs or liquidating their estates. In conflict with this policy of uniform bankruptcy laws is the section 109 exclusion of specific entities from those same uniform laws. In the case at bench, exclusion effectively denies the debtor an opportunity to reorganize. While Wisconsin statutes may give the Commissioner the power to rehabilitate insolvent corporations, it is clear from the record that the Commissioner's interest would be solely in liquidating the business, transferring enrollees to another HMO and putting MHIC out of business. To balance these competing policies, uniform laws versus exclusion of specific entities, this court will exclude only those entities clearly exempted by section 109, thereby narrowly construing the terms of that statute and allowing all others access to the federal bankruptcy laws.

■ This court is unwilling to expand the interpretation of the section 109 domestic insurance company exclusion to include entities operating health maintenance organizations. If states, such as Wisconsin, are allowed to decide which entities may be excluded from relief under the Bankruptcy Code, a clear expression of Congressional intent must be evident. The words "domestic insurance company" found in section 109 evidence no such intent with respect to health maintenance organizations. Accordingly, this court finds that HMOs, such as MHIC, are eligible for relief under the Bankruptcy Code.

## MOTION TO DISMISS FOR CAUSE UNDER SECTION 1112(b)

The Commissioner moved to dismiss MHIC's petition for cause, pursuant to section 1112(b), on the ground that it was not filed in good faith. The Commissioner alleges that MHIC was on notice that under relevant state law it is a domestic insurance company not entitled to be a debtor under the Code and that it represented to the Office of the Commissioner that it would not file for bankruptcy relief. The court has determined that MHIC is an eligible Chapter 11 debtor. Therefore, the remaining issue before the court is whether the debtor's representations to the Commissioner's Office rise to the level of bad faith necessary to justify dismissal of this bankruptcy petition under section 1112(b).

■ The essential requirement for a good faith bankruptcy filing is a bona fide desire to reorganize. "Where the debtor is motivated by a legitimate reorganization purpose and not solely or predominantly by the desire to prevent foreclosure or hinder creditors, bad faith is not present." *In re Spenard Ventures, Inc.*, 18 B.R. 164, 167–68 (Bankr.D.Ala.1982). The only evidence presented by the Commissioner was the certificates executed by Maxicare officers in December 1988, when Maxicare purchased MHIC. The officers certified that there were no present plans to liquidate or otherwise change the corporate structure of MHIC.

■ The Bankruptcy Appellate Panel for the Ninth Circuit recognized the following

factors which are usually present in cases not filed in good faith:

(1) The debtor has only one asset.

(2) The secured creditors' lien encumbers that asset.

(3) There are generally no employees except for the principals.

(4) There is little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments.

(5) There are few, if any, unsecured creditors whose claims are relatively small.

(6) There are allegations of wrongdoing by the debtor or its principals.

(7) The debtor is afflicted with the "new debtor syndrome" in which a one-asset equity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors.

(8) Bankruptcy offers the only possibility of forestalling loss of the property.

*In re Stolrow's, Inc.,* 84 B.R. 167, 171 (9th Cir. BAP 1988). The Commissioner does not allege even one of these factors in support of the motion to dismiss MHIC's petition as a "bad faith" filing. He simply relies on the statements contained in certificates of Maxicare officers filed with the Commissioner's Office. Those documents included representations that MHIC is a domestic stock insurance corporation and that it had no present plans to liquidate or change the corporate structure. However, the representations did not constitute a promise by any Maxicare affiliate to refrain from seeking bankruptcy relief. Such a promise to waive the right to file bankruptcy would be unenforceable. *In re Howe,* 78 B.R. 226, 228 (Bankr.D.S.D.1987). The debtor's representations to the Office of the Commissioner did not rise to the level of bad faith necessary to justify dismissal of MHIC's petition pursuant to section 1112(b).

The Commissioner failed to show that MHIC had any improper motive for filing its Chapter 11 petition or to present any evidence of MHIC's bad faith in filing for bankruptcy relief. Accordingly, this court denies the motion to dismiss for cause as a "bad faith" filing under section 1112(b).

## CONCLUSION

For the foregoing reasons, the court finds that MHIC is an eligible debtor under 11 U.S.C. § 109 and that the debtor did not file the case in bad faith. This memorandum of decision incorporates the court's findings of fact and conclusions of law. Accordingly, the motions to dismiss are denied. Counsel for the debtor will prepare, lodge and serve an order denying the motions as required by Bankruptcy Rule 9021 and Local Rule 116(1)(a).