In re **FAMILY HEALTH SERVICES, INC., et al., Debtors.**

Nos. SACV 89–695–GLT, 89–696–GLT, 89–796–GLT, 89–898–GLT, 90–672–GLT and 90–682–GLT.

United States District Court, C.D. California.

July 8, 1992.

Milgrim Thomajan & Lee P.C., Stanley McDermott, III, Carole Neville, Peter M. Corrigan, New York City, Milgrim Thomajan & Lee, Barry L. Burten, Los Angeles, Cal., for debtors.

Asst. Atty. Gen., Fred Nepple, Gen. Counsel, Office of the Com'r of Ins., State of Wis., Madison, Wis., La Follette & Sinykin, Brady C. Williamson, Jonathan C. Aked, Madison, Wis., Manatt, Phelps, Phillips & Kantor, Simon Aron, Todd W. Mathers, Los Angeles, Cal., for appellants Wisconsin Ins., Sec. Fund and Robert D. Haase, Com'r of Ins. for the State of Wis.

## RULING ON APPEAL

GARY L. TAYLOR, District Judge.

In this bankruptcy appeal, the court holds that a health maintenance organization ("HMO") licensed, regulated, and conducting business in a state as a domestic insurance company, constitutes a domestic insurance company under 11 U.S.C. § 109(b), and is not eligible for bankruptcy protection.

## I. BACKGROUND

Debtor Maxicare Health Insurance Company and its 48 affiliates (collectively "Maxicare"), a nationwide HMO, serves as intermediary for private party enrollees seeking medical services, and medical care providers (doctors, hospitals, etc.). Enrollees, or their employers, buy medical insurance policies from Maxicare, and receive medical services from providers. Maxicare then pays providers for these services.

In an aggressive expansion policy, Maxicare formed one of the largest publicly traded HMO networks in the country, having 48 separate affiliates working in different states, with 2.3 million members nationwide. Along with this expansion came burgeoning debt. By the beginning of 1987 Maxicare owed approximately 464 million dollars. Efforts to reduce this debt were unsuccessful. Consequently, in March 1989, Maxicare and its 48 affiliates filed for Chapter 11 bankruptcy protection.

A number of creditors contested whether the bankruptcy court had jurisdiction over Maxicare. Bankruptcy law specifically excludes domestic insurance companies from filing for bankruptcy. 11 U.S.C. § 109(b). These parties argued that Maxicare could not be a Chapter 11 debtor because the company is licensed in many states as a domestic insurance company. The bankruptcy judge ruled that the bankruptcy court did have jurisdiction. *See* decision regarding the current appellants at *In re Family Health Services, Inc.*, 104 B.R. 279 (Bankr.C.D.Cal.1989).

Thereafter, the bankruptcy court approved Maxicare's Reorganization Plan, which consolidated various affiliates into a single unit and established a complex debt repayment package. The bankruptcy court approved the Plan in July 1990.

The current appellants are two Wisconsin entities: the Wisconsin Commissioner of Insurance and the Wisconsin Insurance Security Fund (collectively "Wisconsin").[1] They contend Maxicare's Wisconsin affiliate is a "domestic insurance company" and, therefore, exempt from federal bankruptcy protection under 11 U.S.C. § 109(b).

## II. DISCUSSION

■ Under 11 U.S.C. § 109(b)(2) a "domestic insurance company" cannot be a bankruptcy debtor. This court holds that the Maxicare Wisconsin affiliate constitutes a domestic insurance company within the meaning of 11 U.S.C. § 109(b)(2), and may not therefore be a debtor.[2] The Wisconsin affiliate fits within § 109(b) because Wisconsin law unequivocally treats HMOs as domestic insurance companies. Moreover, the nature of Maxicare's business compels a finding that the affiliate is a domestic insurance company.

Under the analysis adopted by most jurisdictions, courts examine the law of the state of incorporation to determine the classification of an entity for bankruptcy eligibility purposes. *In re Cash Currency Exchange, Inc.*, 762 F.2d 542 (7th Cir.1985). If the state law classifies the entity as one excluded from bankruptcy protection, the inquiry generally ends there. *Id.* at 548.

■ The state classification test is controlling in this circuit. *See Security Building and Loan Ass'n v. Spurlock*, 65 F.2d 768 (9th Cir.), *cert denied*, 290 U.S. 678, 54 S.Ct. 102, 78 L.Ed. 585 (1933) (relying exclusively on the state classification test); *In re Oil and Gas Ins. Co.*, Case No. SA CV 90–752 AHS (C.D.Cal. July 31, 1991) (Judge Stotler relying exclusively on the state classification test to determine whether an entity is an insurance company under § 109). As *Spurlock* held in construing

---

1. There originally were numerous appellants on this issue. At this time, all appear to be resolved except for the appeals of the Wisconsin parties.

2. This court rejects the preliminary contentions raised by the parties. First, appellants have standing to sue because the Plan potentially adversely affects them. *See Matter of Fondiller*, 707 F.2d 441 (9th Cir.1983). The current Plan will deprive them of the opportunity to liquidate Maxicare at the state level. Moreover, Wisconsin faces adverse consequences because the Wisconsin Insurance Security Fund will have to compensate Wisconsin residents for whom the Plan does not provide.

The appeal is not moot. This court previously rejected this argument made by the appellees, and insufficient facts have been shown to justify a reconsideration. *See* Local Court Rule 7.16. Moreover, effective relief is still possible. *See In re Roberts Farms, Inc.*, 652 F.2d 793, 797 (9th Cir.1981) (where effective relief is still possible and appellant sought a stay, bankruptcy appeal is not moot).

Finally, Maxicare's disclosure statement is adequate. The bankruptcy judge so held, and this court would only reverse this determination if the bankruptcy judge was clearly erroneous. *In re Globe Inv. and Loan Co. Inc.*, 867 F.2d 556 (9th Cir.1989). After reviewing the evidence, this court holds that the bankruptcy judge's ruling was proper.

the exclusion of building and loan associations from bankruptcy protection, Congressional intent was to accept a state's classification of an entity:

"It follows that when Congress enacted this legislation without any attempt to define the characteristics of the building and loan associations intended to be excluded from the operation of the Bankruptcy Act, it necessarily recognized the various definitions thereof in the statutes of the several states as indicating what constitutes a building and loan association in the respective states. To attempt by judicial construction to incorporate into the federal law some definition of a building and loan association would be in effect to legislate upon that subject. Congress was satisfied to take the state statutes as they found them and we must do so." *Spurlock*, 65 F.2d at page 771.

Maxicare's Wisconsin affiliate is incorporated and regulated as a domestic insurance company in Wisconsin. Wis.Stat.Ann. § 609. Its certificate of incorporation was issued by the Commissioner of Insurance. Under Wisconsin law, it has the same powers and duties as any insurance company incorporated in the state. *Id.* Maxicare's business is defined as insurance under the Wisconsin Insurance Code. *Id.* Accordingly, under Wisconsin state law, Maxicare constitutes a domestic insurance company exempt from federal bankruptcy protection. The bankruptcy judge concluded this in his opinion. *In re Family Health Services*, 104 B.R. at 283.

However, rather than find state law dispositive, the bankruptcy judge turned to *Cash Currency Exchange*, 762 F.2d at 548, which holds that, *if state law does not classify the entity*, the court adopts a functional analysis, and examines whether the entity is the substantial equivalent of those in the excluded class. The bankruptcy judge concluded that HMO's are not functionally comparable to insurance companies, and therefore the state classification test was inconclusive. *In re Family Health Services*, 104 B.R. at 280.

■ It was not appropriate to use a functional analysis in the case at bar. Under *Cash Currency Exchange*, it may be appropriate to use a functional analysis *if* state law does not definitively classify the entity as a member of the excluded class. However, Wisconsin state law unequivocally *does* classify HMOs as insurance companies. Under *Cash Currency Exchange*, this is dispositive of the issue. A functional analysis was not needed.

■ Even if the court were to use the functional analysis approach, this HMO is "substantially equivalent" to an insurance company. Wisconsin HMOs and insurance companies have identical powers. Wis. Stat.Ann. § 609. Both are subject to identical regulations. *Id.* Both bear a significant burden of the cost of providing physician and hospital services to its members. Both also determine their rates based on actuarial determination of costs. Both spread risk among consumers. These factors have led all other courts which examined this issue to find that HMOs licensed and regulated in states as domestic insurance companies are excluded from bankruptcy protection.[3] *See In re Beacon Health, Inc.*, 105 B.R. 178 (Bankr.D.N.H. 1989); *In re Portland Metro Health, Inc.*, 15 B.R. 102 (Bankr.Or.1981). *See also* Resnik, *Maxicare as a Guide for Health Maintenance Organizations (HMO) in Bankruptcy*, 8 Bankr.Dev.J. 271, 277 (1991) (noting that only the Maxicare court allowed an entity licensed and regulated as an insurance company to remain in bankruptcy).

Some authorities would support use of an independent classification analysis, on the theory that enumeration of specific exclusions from a statute indicates that the law applies to all cases not specifically excluded. *In re Family Services*, 104 B.R. at 286 (citing 2A Sutherland, *Statutory Construction* § 47.23 (4th ed. 1984)). Therefore, Maxicare argues, § 109(b) of the bankruptcy code does not list HMOs among

---

**3.** This conclusion here is reinforced by the name of the company, Maxicare Health *Insurance* Company. Although a name is not determinative, the fact that the entity holds itself out as an insurance company supports Wisconsin's position.

the entities expressly excluded from eligibility for relief, and so HMOs are not covered by the statute. However, this analysis begs the question in this case. Under Wisconsin law, this entity *is* an insurance company, and therefore *is* covered by § 109(b).[4]

In upholding bankruptcy court jurisdiction over Maxicare's Wisconsin affiliate, the bankruptcy judge applied an "alternative relief test," holding that Chapter 11 is a satisfactory alternative to the statutory liquidation and rehabilitation provisions of Wisconsin law. *In re Family Health Services*, 104 B.R. at 287. *See In re Republic Trust and Savings Co.*, 59 B.R. 606, 614 (Bankr.N.D.Okla.1986) (using a similar analysis). This court holds that the "alternative relief test" is not appropriate in the case at bar. As stated in *In re Beacon Health, Inc.*, 105 B.R. at 182, "The court finds this focus [the alternative relief test] to be irrelevant. In legislating the exception to federal bankruptcy relief, Congress said in effect if an entity is an 'insurance company' there is no federal relief regardless of any consideration of comparable effectiveness of the state and federal procedures. A bankruptcy court is not authorized ... to ignore the command of § 109(b) of the Bankruptcy Code just because it believes relief in its court will be more effective."

Maxicare relies on *In re Health Maintenance Foundation*, 680 F.2d 619 (9th Cir. 1982), for the proposition that HMOs can proceed in bankruptcy. However, that case does not govern the present situation. First, the jurisdiction of the bankruptcy court was not at issue in that case. Second, this court does not hold that all HMOs are excluded from bankruptcy relief, but only HMOs in states which classify and regulate HMOs as insurance companies. For example, in *In re Michigan Master Health Plan, Inc.*, 90 B.R. 274 (E.D.Mich. 1984), the district court concluded that an HMO was eligible for bankruptcy; however, the court specifically relied on the fact that under Michigan law HMOs are completely *distinct* from insurance companies.

During the last few years, state legislatures have enacted greater controls over HMOs. The legislation was prompted by concerns that state governments should regulate HMOs much in the way they control insurance companies. Bowdre, *Guaranty Association Law in Alabama*, 20 Cumb.L.Rev. 321, 357 (1990); Mullen, *States to Bar HMO Bankruptcies*, Managed Health Care, July 17, 1989. To now hold that states cannot govern the reorganization and liquidation of HMOs would significantly harm these legislative efforts, and would undermine the purpose of § 109.

The bankruptcy court was correct in its concern about confusion and lack of consistency through piecemeal administration of a multi-state business reorganization. But those same problems could also arise concerning railroads, banks, savings and loan associations, and credit unions, which are all excluded from bankruptcy protection by section 109. It is for Congress, not the courts, to make any changes in the bankruptcy law that uniform administration requires.

### III. DISPOSITION

For the reasons stated above, the court concludes that Maxicare's Wisconsin affiliate is not eligible for bankruptcy court protection. Accordingly, the appealed ruling of the bankruptcy court is REVERSED. The matter is REMANDED to the bankruptcy court for such further proceedings as may be appropriate.

---

**4.** Moreover, even the courts that have used the statutory analysis of the independent classification test look to the similarities between the excluded entity and the entity in question. *See Cash Currency Exchange*, 762 F.2d at 552; *In re Bankwest Boulder Industrial Bank.* 82 B.R. 559, 565 (Bankr.D.Colo.1988). Upon examining the similarities between insurance companies and Maxicare's Wisconsin affiliate, this court concludes that the Wisconsin affiliate is ineligible for bankruptcy relief.